DECISION
PER CURIAM.
An appeal of the Ho-Chunk Nation (hereinafter HCN) Trial Court ruling in Janet Funmaker v. Libby Fairchild, in her capacity as Executive Director of HCN Dep’t of Personnel, HCN Dep’t of Personnel, and HCN, CV 06-61 (HCN Tr. Ct., Mar., 9, 2007). This case was heard by the Court on July 21, 2007, with Chief Justice Hunter, Justice Funmaker and Justice Greendeer-Lee presiding. Attorney Brian Stevens of the Department of Justice represented the Appellants, and attorney Mark Goodman represented the Appellee.
*63 PROCEDURAL HISTORY
On April 18, 2006, the Grievance Review Board (hereinafter GRB) issued its Decision in Janet Funmaker’s grievance contesting her suspension and then termination from her job as hotel front desk supervisor at Ho-Chunk Casino, Hotel & Convention Center. Janet Funmaker v. Judy Whitehorse, in her official capacity as Front Desk Manager, Ho-Chunk Casino, Hotel and Convention Center, Case Nos.: GRB-060-06-T and GRB-050-050S (GRB, Apr. 18, 2006) (hereinafter GRB Decision). The GRB found that Appel-lee’s suspension was wrongful and that she was not given due process for her suspension and termination. Consequently, the GRB instructed the Executive Director of Personnel to grant Appellee the following relief:
a. Expunge the petitioner’s personnel record regarding the suspension;
b. Grant back pay for the duration of the suspension;
c. Receive benefits for the duration of the suspension;
d. Reinstatement to petitioner’s former position, or a comparable position within the Nation;
e. Expunge the termination from petitioner’s record;
f. Receive back pay as a result of the termination; and
g. Receive full benefits as a result of the termination.
Id. at 15. The then Executive Director of Personnel complied with the GRB Decision with the exception of giving Appellee back pay, which she claimed she lacked the authority to award. Appellee then tiled a Complaint with the Trial Court requesting the GRB decision be enforced. The Trial Court rendered its Order (Remand) on March 9, 2007, ruling that the GRB did have the authority to grant monetary relief and that sovereign immunity did not apply to the GRB. Order (Remand) at 16. Appellants filed a timely appeal with this Court on March 20, 2007. Briefs were submitted by both parties, and Oral Argument was heard on July 21, 2007. At Oral Argument, a Joint Stipulation and, Identification of Issues Notice of Substitution of Party (hereinafter Joint Stipulation ) was filed. In the Joint Stipulation, the parties agreed to substitute Tracy Thundercloud, the current Executive Director of the Department of Personnel, for Libby Fair-child, the former Executive Director of Personnel. Joint Stipulation at 2. Additionally, the parties stipulated to the fact that Appellee was wrongfully terminated and was entitled to up to $10,000 in back pay in accordance with ERA § 5.35. Id. Consequently, the parties asked the Supreme Court to only clarify the GRB’s authority, specifically in regard to whether the GRB is able to grant monetary damages. Id. at 2-3.
ISSUE PRESENTED
Does the GRB have the authority to grant monetary awards?
DECISION
Any analysis of the GRB’s authority to issue remedies must start with an examination of the Employment Relations Act (hereinafter ERA), the statute which creates the GRB. Paragraph 34h of the ERA describes the remedial power of the GRB: “The Board shall have the authority to direct the Executive Director of Personnel to execute the appropriate remedy consistent with the determination of the Board.” ERA, 6 HCC § 5.34h, (emphasis added). Appellants must then prove that “appropriate remedy” does not include back pay in order to prevail. Appellants seek to exclude monetary awards by applying the principle of sovereign immunity *64 to GRB decisions, since sovereign immunity traditionally protects a nation from monetary but not equitable relief. The HCN sovereign immunity clause states: “The Ho-Ghunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity ...” HCN Const., Art. VII, § 1. Appellants put forth two arguments to support why the GRB’s decisions should fall within the sovereign immunity clause: 1. Suits do not have to occur in a court of law. The GRB adjudicates suits; therefore, sovereign immunity applies. Appellant Br. at 5. And, 2. The power the GRB exerts is not legislative but judicial. Therefore, the GRB is more like a court, so the disputes that it adjudicates are suits and sovereign immunity applies. Id. The Court rejects both of these contentions.
Appellants define a suit in the following manner: “... a suit is the proceeding, in whatever form, before a body capable of resolving the dispute, assigning the rights of parties, and affording remedies under law.” Id. However, Appellants offer no citation for this definition. The Trial Court does provide citation for its contention that suits can only occur in a court of law. Order (Remand) at 12, n. 5. Additionally, both Black’s and Ballentine’s law dictionaries state that a suit has to occur in a court of law: “Any proceeding by a party or parties against another in a court of law.” Black’s Law Dictionary 1448 (7th Ed.1999); “Any proceeding in a court of justice by which a person pursues therein that remedy which the law affords him.” Ballentine’s Law Dictionary (3rd Ed.1969). The Court, therefore, rules that a “suit” has to occur in a court of law.
The next question the Court must then decide is whether the GRB can be considered a court. If the GRB is a court, it adjudicates suits and sovereign immunity would apply. Appellants state that “[t]he GRB is more similar to a lower court of special jurisdiction, created by Legislative act, and as authorized in Article VII of the HCN Constitution.” Appellant Br. at o. However, both the Department of Peeson-nel Establishment and Organization Act of 2001 (hereinafter Establishment Act) and the ERA directly contradict Appellants’ argument. The Constitution states that the Legislature delegates its power to Executive Departments. HCN Const., Art. V, § 2(b). The Personnel Department is an example of an Executive Department that is wielding delegated legislative power as Art. V, § 2(b) is cited in the authority section of the Establishment Act. Establishment Act, 1 HCC § 10.1b. The GRB is an agency within the Department of Personnel. Several paragraphs within the ERA support this contention. For example, the paragraph entitled, “Responsibilities,” of the ERA states that “[t]he Department of Personnel Establishment and Organization Act of 2001 (1 HCC § 10) delegates to the Executive Director of the Department of Personnel the functions and authority to implement, manage, enforce and promulgate, i.e. create, establish, publish, make known and carry out the policies within this Act.” ERA, § 5.4a. The Department of Personnel is charged with the responsibility of investigating all incidents resulting in disciplinary action and with creating an impartial GRB to review such disciplinary actions. ERA, § 5.34a. The GRB consists of employees of the Nation and one legal representative of the Department of Personnel. ERA, § 5.34b(1-2). Finally, a staff member of the Department of Personnel is present at GRB hearings to “advise all participants with regards to policy and procedure.” ERA § 5.34f(1). Because the GRB is part of the Department of Personnel, it too only has delegated Legislative authority. Consequently, the GRB cannot be considered a court and has *65 no judicial authority. If it were to be considered a court, grave separation of powers problems would arise. First, as the Trial Court correctly notes, the Legislature would be impermissibly delegating authority it does not have, encroaching upon the Judiciary’s authority. Order (Remand) at 12. And second, an Executive Department does not have the authority to supervise a court, as the Personnel Department does the GRB.
Several practical problems would result if the GRB did not have the authority to grant monetary awards as well. The Trial Court poses a hypothetical scenario illustrating the problems that could occur if the GRB could not award back pay in which those who succeed at the GRB would not be allowed back pay but those who lost at the GRB could be granted back pay when they appealed to the Trial Court. Order (Remand) at 14. Appellants counter by alleging the Trial Court erred in its hypothetical scenario and propose their own procedural interpretation of the ERA. Before comparing the Trial Court’s and Appellants’ differing proposals, the Court notes the Appellants’ misuse of the legal term, “error,” in Appellants’ brief to prevent future similar mistakes. The word, “error,” should not be used when the attorney merely disagreed with a court’s interpretation of the law. Questions of law are reviewed de novo, requiring no error for the Supreme Court to reverse a Trial Court decision. Error is primarily associated with findings of fact that are found erroneous under a clearly erroneous standard, United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), or when the Trial Court abuses its discretion, Rae Anna, Garcia v. Joan (Greendeer-Lee, Loa Porter; Hattie Walker and, Greg Garvin as Officials of the HCN; HCN Personnel Dep’t and HCN Health and Human Services Dep’t, SU 03-01 (HCN S.Ct., Apr. 30, 2003) at 3-4. In this case, the hypothetical example posed by the Trial Court was dicta and cannot be considered error.
Furthermore, Appellants never explain why they consider the Trial Court’s hypothetical example to be error. Appellants seem to suggest that the Trial Court erred by ruling that the hypothetical procedure it discussed was the only possible procedure, which has no basis in the ERA. Appellant Br. at 9. First, the Trial Court does not have to address every possible interpretation of the ERA, especially when it is posing a hypothetical example. Second, the Trial Court’s proposed procedure is entirely plausible. The ERA allows for an appeal to the Trial Court. ERA, § 5.34a(3). The word, “appeal,” generally assumes that a party is seeking reversal of a lower court or agency’s decision. Therefore, following a strict interpretation of the ERA, a person who prevailed at the GRB could not appeal to the Trial Court because they would not be seeking a reversal. A more liberal interpretation of the ERA may allow for those who prevail at the GRB to then go to the Trial Court for a determination of their back pay, as Appellants suggest. However, such a procedure would be highly impractical. This Court agrees with the Trial Court that one of the presumed purposes of establishing the GRB was to limit the number of employment cases in the court system. Order (Remand) at 13. If Appellants’ proposed procedure were followed, every grievance involving a suspension or termination would have to go to the Trial Court. Additionally, calculating back pay requires no expertise that a Trial Court may have but the GRB would not. It would be a waste of judicial resources to have the GRB finds the facts of wage rate plus days missed due to a suspension or termination but then go to the Trial Court simply to do the math. A procedure such as this would *66 needlessly postpone the restitution that those who have been wrongly suspended or terminated deserved.
The Trial Court’s and Appellants’ proposed procedures highlight the possible problems that could occur if a court is overzealous in its interpreting of statutes. Here, the statute is unambiguous. The ERA states that the GRB has the authority to grant any “appropriate remedy.” ERA, § 5.34h. Appellants are correct in that the Legislature probably never intended for the GRB to be able to grant limitless monetary awards, especially given that there is a monetary cap on the Trial Court’s ability to grant monetary awards. However, it is not the Court’s job to fix drafting mistakes in Legislation. The Tidal Court was correct to not read into the statute a procedure not directly stated, as Appellant would have this court do. These problems are best resolved by the Legislature who makes the law. Consequently, the Court strongly urges the Legislature to reexamine the ERA and, if they so choose, amend it to include a monetary cap for the GRB.
Finally, the problematic nature of the Joint Stipulation must be addressed. In the Joint Stipulation, the parties agreed to limit the back pay according to ERA § 5.35. Joint Stipulation at 2. The Court finds the unorthodox tactic used by the parties to be largely ineffectual. Stipulating to using a law that the Trial Court specifically ruled did not apply carries little to no weight with the Court. Clearly, if the Court owes no deference to the Trial Court’s interpretations of the law, no deference will be given to the parties’ agreement about the law either. The Joint Stipulation seems to imply that because the parties never asked the Trial Court to determine whether or not the GRB could award more than $10,000, the Supreme Court should not address this issue and only decide whether the GRB can award monetary damages. Joint Stipulation at 2-3. However, the Trial Court’s ruling that the GRB can award more than $10,000 is directly correlated to the issue of determining the GRB’s remedial authority. Because Appellants made the sovereign immunity claim at the Trial Court level, the Trial Court explained why sovereign immunity did not apply and, therefore, why the $10,000 limited waiver of sovereign immunity did not apply. Therefore, the Trial Court’s and now this Court’s decision to address why the $10,000 limit did not apply to the GRB was both necessary and appropriate.
The most troubling aspect of the Joint Stipulation, though, is the fact that Appellee agreed to number four, which states: “The parties stipulate that Appel-lee, Janet Funmaker was wrongfully terminated and is entitled to back pay not to exceed $10,000 as per Rule 35 of the ERA.” Joint Stipulation at 2.[1] Why the Appellee would agree to limit her back pay to $18,000 less than what she actually lost is baffling to the Court.[2] If it could be construed that Appellee did not understand the Joint Stipulation, the Court may have been willing to overlook the bad lawyering and rule the Joint Stipulation *67 as void since the agreed $10,000 limit is based on an inapplicable law. However, the Appellee understood the Joint Stipulation well enough to cross out the other two paragraphs of the Joint Stipulation that called for overturning the Trial Court decision. Joint Stipulation at 2, 3. Additionally, Appellee made no effort to argue her case in her brief, characterizing the Appellants’ argument as “esoteric” and just stating that she wanted her money that she was entitled to. Appellee Br. at 3. The Court sympathizes that multiple appeals of a case can be time consuming, but that is no excuse for essentially refusing to make any legal arguments on your behalf, especially when so great a sum is at stake.
CONCLUSION
Based on the foregoing, the Court affirms the Trial Court’s decision in Funmaker v. Libby Fairchild, et al., CV 06-61 (HCN Tr. Ct., Mar. 9, 2007). The Court remands back to the GRB to find facts necessary to determine the back pay entitled to the Appellee. If the back pay is greater than $10,000, the GRB should only award $10,000 as per the Joint Stipulation. The Court further reminds the GRB that these facts should have been found and stated in the original Decision. When reviewing administrative decisions, the Trial Court plays the role of an appellate court and is not charged with finding facts. The GRB, with its greater expertise and familiarity, is the appropriate body to find facts.
IT IS SO ORDERED. EGI HES-KEKJENET.
GREENDEER-LEE, Associate Justice.
This was an unusual case since the Appellant was arguing against the reasoning of the lower court decision and not against the Appellee. During the lower court hearing, the Appellee said the (trial) court should enforce the order because ... the court can award monetary relief in cases such as this one. Or the court could render an advisory opinion. During oral arguments, the Appellee only wishes for a quick resolution and financial award.
I am dissenting from the Court for the reasoning that follows because both the Appellee and Appellant agreed that the Trial Court has the authority to award monetary relief. The lower cpurt begins by providing an interesting exercise in legal writing about what constituted a “suit”. Further that only suits and cases of controversy are heard before a court of law. This is not disputed. However, the trial court did reference that the “term is any proceeding ...” Appellant also provided “a suit is the proceeding.... ” Though albeit inexperience or lack of thorough research efforts by the Appellant, I did find that such similarities worthy of further discussion. A further examination of a proceeding, “a proceeding any procedural means for seeking redress from a tribunal or agency”. An act or step that is part of a larger action. BLACK’S LAW DICTIONARY 1221 (7th ED.1999). The proceedings can be criminal, informal, contempt, and administrative. So if this matter can be considered an administrative proceeding, first the matter is addressed before an agency with the expertise of the corresponding policies. This step prevents an unnecessary burden to the Judiciary, yet should the matter remain unresolved, the Judiciary is the next step. I liken the hearings of the GRB to administrative proceedings.[3]
The Court regards the actions of the GRB similar to legislative actions, and not *68 in fact suits ... because only the Judiciary is entrusted with such authority to oversee cases and controversies. I do not believe that one can conclude that the Legislature is impermissibly delegating authority that encroaches on the Judiciary branch when enabling the GRB. Nor should one have concluded that the executive branch is supervising a court just because the GRB is an extension of its Personnel Department. I see the Legislature enacting a board to administer administrative proceedings for limited purpose of resulting personnel grievances. The Legislature intentionally delineated the authority of the GRB exactly limited to those duties already in the purview of the Personnel Department. Those remedies of equity to award merely gave the GRB the discretion to determine appropriate remedies, since not all grievances are similar in incident. Further the Legislature specifically cited in the ERA 6 HCC § 5.35 the Constitution authority of the Trial Court. Rather than usurping the authority of the Judiciary, the Legislature kept intact the necessary step of any monetary remedy to be entrusted to and entered before the Trial Court. For example, the Gaming Ordinance § 821 allows for monetary remedies.
Such interpretation does not lend to the intentions by the Legislature to relieve the Trial Court the burden of resolving controversial personnel matters. I believe the Legislature were mindful of Constitutional authority, and, liken the monetary awards that should be entered at the Trial Court similar to those small claim matters also being handled by the Trial Court. If truly attempting to relieve the Trial Court of the burden of matters before their court, why did the Legislature allow for the jurisdiction of the Courts to extend to small claims, probate, and divorce matters around the same time?[4]

. The Court also notes that Appellants incorrectly referred to "rales” in the ERA instead of sections. For example, in ERA, § 5.35a, the “5” is the section, the "35” is the subsection, and the "a” is the paragraph. See Legislative Organization Act of 2001, 2 HCC § 11.35.

. $17,000 is an unofficial figure found in the Complaint filed by the Appellee at the Trial Court. The Appellee claimed she lost $27, 040 in wages from her termination and $1,040 from her suspension. Compl. at 3. Janet Funmaker v. Tracy Thundercloud, et at., SU 07-05

. Administrative Procedure Act of 1946, (60 Stat. 237, 5 U.S.C.A.) governing practice and proceedings before federal administrative agencies.

. Eviction Ordinance, 8 HCC Section 3 (2005); HCN Gen. Council Res. 11-19-02(7); Divorce and Custody Ordinance, 4 HCC § 9 (2004)