DECISION
PER CURIAM.
This is an appeal from the Ho-Chunk Nation (hereinafter HCN) Trial Court ruling in Willard Lonetree v. Larry Garvin, in his official capacity as Executive Director of Ho-Chunk Nation Heritage Preservation, CV 06-74 (HCN Tr. Ct., *73 Mar. 9, 2007). This case was heard by the Court on July 21, 2007, with Chief Justice Hunter, Justice Funmaker and Justice Greendeer-Lee presiding. Attorney Brian Stevens of the Department of Justice represented Appellant, and attorney Mark Goodman represented Appellee.
FACTS
Appellee, Willard Lonetree, was employed as the Language Division Manager at Hocak Wa.zija Had Language division, a division within the HCN Department of Heritage Preservation. Appellant, Larry Garvin, is employed as Executive Director of the Heritage Preservation Department and was the Appellee’s supervisor. A female employee who worked with Appellee complained of sexual harassment, resulting in an investigation by the Personnel Department. On March 3, 2006, Appellee received a ten day suspension. On March 8, 2006, the Appellee received a termination letter dated March 7, 2006, by certified mail. Appellee timely grieved the suspension and termination to the GRB on March 9, 2006. On August 4, 2006, the GRB conducted a hearing. At the hearing, the female employee testified as to Appellee’s repeated unwanted advances and that she informed him that his conduct was unwelcome. Appellee did not testify at the hearing, but his attorney conceded that he engaged in the woman’s described conduct.
PROCEDURAL HISTORY
On August 4, 2006, the Grievance Review Board issued its Decision in Willard Lonetree’s grievance, which contested his suspension and termination from his job as Language Division Manager. In re the Matter of: Willard Lonetree v. Larry Garvin, GRB-201-06-S/T (GRB, Aug. 4, 2006) (hereinafter GRB Decision). The GRB upheld Appellee’s suspension and termination, despite the fact that the due process “... utilized could have been better.” GRB Decision at 4. Specifically, the GRB determined that “[d]ue process was afforded to the [Appellee] as part of the investigation that was conducted” because “the investigator did speak with the [Appellee] about the allegations.” Appellee filed a Petition for Administrative Review with the Trial Court on September 5, 2006. On March 9, 2007, the Trial Court issued an Order (Remand), finding that Appellee’s due process rights had been violated. Order at 18. Consequently, the Trial Court awarded back pay for the time ¡from when the Appellee should have received a pre-deprivation hearing until his hearing with the GRB. Id. at 19. The Trial Court also remanded the case to the GRB to determine if Appellee would have been terminated even if he had received a pre-depri-vation hearing. Id. Appellants filed an appeal with this Court on March 19, 2007. Briefs were written by both parties and Oral Argument was heard on July 21, 2007.
ISSUES PRESENTED
1. Can the Trial Court employ de novo review of an agency’s application and interpretation of Constitutional law?
2. Can an investigation constitute an opportunity to be heard for purposes of due process?
DECISION
Before analyzing the issues presented, the Court points out the misuse of the legal term, “error,” in Appellant’s brief. As the Court discussed in Janet Funmaker v. Tracy Thundercloud, in his capacity as acting Executive Director of HCN Dep’t of Personnel, HCN Department of Personnel, HCN, SU 07-05, 7 Am. *74 Tribal Law 61, 2007 WL 5627246 (HCN S.Ct., Aug. 31, 2007), “error” should not be used when a party merely disagrees with the Trial Court’s findings of law. Here, Appellant asserts that “[T]he Trial Court erroneously found that investigators are incapable of satisfying due process requirements in employment disciplinary actions.” Appellant Br. at 9. Whether or not investigators are capable of satisfying due process requirements is a constitutional question, which the Trial Court cannot err in interpreting. The Trial Court could, of course, be incorrect in its interpretation of the Constitution, in which case this Court would overturn the Trial Court’s opinion. However, “incorrect” and “error” are not synonymous in a legal context. The Court urges attorneys to be more careful in their terminology so as to avoid needless confusion of the issues.
1. The Trial Court may review an agency’s constitutional determinations de novo.
Despite the Appellant’s contention that the Trial Court’s ruling is “without analysis or reason behind it,” the Trial Court gives a detailed explanation of why it chose to use a de novo standard of review. Appellant Br. at 7. The Trial Court first details the general standard of review given to Agency determinations: “[a] court must determine whether the challenged administrative action rests upon substantial evidence and escapes a characterization of arbitrary and capricious.” Order at 14. The Trial Court does note that it would be impermissible to use a de novo review merely because there is a question of law. Id. However, a court may “... set aside an agency action as contrary to law when the agency clearly acts outside the parameters of its legislatively delegated authority.” The Trial Court further reasons that the HCN Legislature does not have the ability to confer constitutional adjudication authority upon an executive administrative agency. Order at 15. Consequently, the Trial Court concludes that if an agency misinterprets constitutional prerequisites, the court has the power to abandon the deferential standard and use de novo review. Id. at 15.
In response to the Trial Court reasoning, Appellant argues that the Trial Court was required by ERA § 5.35e to apply an arbitrary and capricious standard when reviewing GRB decisions. Appellant Br. at 6, n. 1. However, adopting Appellant’s view of the Court’s power to review agency decisions would cause serious legal and practical pi'oblems for the courts. The Appellant is correct that the ERA is clear about the deference the Trial Court should give GRB decisions: “The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary and capricious.” ERA, § 5.35e. However, a guiding principle in statutory interpretation is that statutes cannot be interpreted in such a way as to violate constitutional principles. Only the Judiciary has the “power to interpret and apply the Constitution and laws of the H-Chunk Nation.” HCC Constitution, Art. VII, § 2. Here, Appellant argues that the Judiciary should essentially abandon its constitutional mandate to interpret the due process clause in the Constitution to an agency created by the Legislature. If the Court were to do as Appellant suggests, it would violate separation of powers principles, since the Legislature would then have the power to not only make the law but interpret it as well. Case law also supports the Trial Court’s contention. In Joyce Warner, et al. v. HCN Election Board, CV 95-03, -04, -05, -06, -09, -10 (HCN Tr. Ct., July 3, 1995), the court ruled that it “... cannot defer to the expertise of an agency of the Nation in inter *75 preting the Constitution of the Ho-Chunk Nation.” Joyce Warner, et al. v. HCN Election Board at 20.
Ceding constitutional interpretation to agencies would create practical problems for the courts as well. Consistency is a primary concern for any court system. Without consistency, members of the Nation do not have a clear sense of their rights and what is owed to them. If the Court were to allow a lower level of due process in some cases but not in others, it would not only raise serious equal protection problems but would leave tribal members confused and frustrated, feeling as if they had not been treated properly. Furthermore, if the GRB can have one standard for due process, then it is entirely plausible for other agencies to create their own standards for due process. The courts would be forced to follow any number of interpretations of due process as long as it is not arbitrary and capricious. Having such a wide variety of interpretations of due process entirely negates the point of a constitutional principle, which is not supposed to vary from dispute to dispute.
When faced with a statute that appears to violate constitutional principles, a court has two alternatives: it can declare the statute void because it is unconstitutional or it can read the statute in such a way to comport with constitutional principles. Here, the Trial Court correctly chose the latter and stated that it would apply the arbitrary and capricious standard unless constitutional principles were at stake.
2. An investigation cannot satisfy the opportunity to be heard element of due process.
Appellant sees three flaws in the Trial Court’s due process analysis. First, Appellant alleges that the Trial Court’s decision that an investigation must be separate from a hearing to fulfill due process obligations is without analysis and is, therefore, arbitrary. Appellant Br. at 7. This allegation is completely without merit. As will be discussed, the Trial Court did provide explanation for every aspect of its decision. Second, Appellant argues that the Trial Court failed to recognize the Nation’s interest in ensuring non-hostile work environments. Appellant Br. at 10. This allegation is unfounded as well. The Trial Court’s decision in no way condones the behavior of the Appellee, and the Trial Court does not dispute Appellee should have been immediately suspended once allegations of sexual harassment were made against him. The Trial Court merely rules that a hearing must be given before termination. Requiring notice and an opportunity to be heard does not perpetuate hostile work environments; it simply provides a procedure to ensure that any allegations are well founded.
Finally, Appellant addresses the Trial Court’s legal argument and asserts an investigation can fulfill due process requirements. Appellant Br. at 9. Although offering no citation, the Appellant does correctly identify the two elements of a due process claim, which are notice and an opportunity to be heard. Id. at 5. Appellant alleges that Appellee knew of the charges against him and responded to them in the course of the investigation. Id. at 5-6. Furthermore, Appellant argues that the Trial Court’s mandate that a supervisor be present is in violation of the ERA which states that sexual harassment charges will be handled by the Personnel Department. ERA, § 5.35e. Id. at 6. The Court finds Appellant’s reasoning problematic for several reasons.
First, Appellant misstates the Trial Court’s conclusions and incorrectly as *76 sumes that requiring the investigation and pre-deprivation hearing be distinct necessitates that supervisors alone can give due process. Id. at 6-7. The Trial Court, however, does not assert that a supervisor must fulfill due process obligation but instead states: “The employee’s right to provide a meaningful response to the charges levied against him or her presumes the presence of an individual possessing discretion to determine the appropriate level of discipline.” Order at 17, (emphasis added). The case law the Trial Court uses to support this contention does involve a supervisor, but the important element of the Trial Court’s citation was not the position of the person providing due process but the fact that he/she “... maintained] discretion to reverse or postpone a termination decision.... ” Order at 17, (citing Sherry Fitzpatrick v. Ho-Chunk Nation et al., CV 04-82 (HCN Tr. Ct., Feb. 20, 2006) at 16 (citation omitted)). Although some ambiguity exists in the Trial Court’s opinion about whether a supervisor is needed, it is clear that the central point is whether the pre-deprivation hearing and investigation are two distinct actions: ‘ Even when a single individual occupies the roles of investigator and pre-deprivation hearing officer, courts have held that due process cannot be afforded during the course of the investigation.” Order at 18 (citations omitted). To avoid possible confusion, the Court rules that a supervisor does not need to be present at a pre-deprivation hearing for sexual harassment. Clearly, if the supervisor is charged with sexual harassment, for example, the pre-deprivation hearing must be run by someone other than the supervisor. The Court, however, declines to determine who should hold the pre-deprivation hearing in sexual harassment complaints because the ERA specifically entrusts the Personnel Department with this duty: “The Department of Personnel shall promulgate guidelines and procedures for the reporting and complaint handling procedures within the Nation.” ERA, § 5.6e(2)(d). The Court strongly suggests that the Department of Personnel fulfill its statutory duty and promulgate rules of procedure for sexual harassment cases to prevent future confusion.
Although the Court declines to determine who should hold the pre-depri-vation hearing, it does have the power to rule what constitutes a pre-deprivation hearing for due process purposes. The Court affirms the Trial Court’s ruling that a pre-deprivation hearing must be separate from an investigation. The Trial Court correctly notes the differences in purpose between an investigation and a pre-deprivation hearing. For example, the Trial Court notes three important functions a hearing fulfills that an investigation does not. Pre-deprivation hearings are better equipped to address requests for leniency by those charged, to consider extenuating circumstance and, most importantly, to critique the investigation itself. Order at 18. Furthermore, it is impossible for an accused to be presented with all the evidence against him/ her during the course of an investigation because all the evidence may not have been gathered. Order at 18. A pre-deprivation hearing would allow for a complete presentation of evidence by the investigator and also provide the accused an opportunity to present any evidence or defenses that did not arise when answering questions during an investigation. Here, the Appellee was not given a pre-deprivation hearing, so his due process rights were violated.
CONCLUSION
Based on the foregoing, the Court affirms the Trial Court’s decision in Willard Lonetree v. Larry Garvin, in his official capacity as Executive Direction of Ho- *77 Chunk Nation Heritage Preservation, CV 06-74 (HCN Tr. Ct., Mar. 9, 2007). The Court holds that although a pre-deprivation hearing does not necessitate the presence of a supervisor, a pre-deprivation hearing must be distinct from the investigation in order to satisfy due process requirements. Because the Appellee does not deny that he did commit sexual harassment, the Court further affirms the Trial Court’s decision to remand to the GRB to resolve the sole issue of whether the Appellant would have terminated the Appel-lee’s employment even if the pre-deprivation had occurred. Order at 19. Finally, in awai'ding back pay, the Court instructs the GRB to consult the Supreme Court Decision in Janet Funmaker v. Tracy Thundercloud, in his capacity as acting Executive Director of HCN Dep’t of Personnel, HCN Department of Personnel, HCN, SU 07-05, 7 Am. Tribal Law 61, 2007 WL 5627246 (HCN S.Ct., Aug. 31, 2007).
It is so ordered.
EGI HESKEKJENET.