*215 ORDER (Affirming)
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether to uphold the decision of the Grievance Review Board (hereinafter GRB). The Court declines the petitioner’s invitation to abandon employing a deferential standard of review and accordingly affirms the agency decision. The analysis of the Court follows below.
*216 PROCEDURAL HISTORY
The petitioner, Steven E. Garvin, by and through Ho-Chunk Nation Department of Justice (hereinafter DOJ) Attorney Brian T. Stevens, filed his Petition for Administrative Review of Grievance Review Board, Decision on May 18, 2007. See Employment Relations Act of 2004 (hereinafter ERA), 6 HCC § 5.35c; see also Ho-Chunk Nation Rules of Ci vil Procedure (hereinafter HCN R. Civ. P.), Rule (53(A)(1)(a). On May 21, 2007, the Court entered the Scheduling Order, setting forth the time-lines and procedures to which the parties should adhere during the pendency of the appeal. In response, the petitioner submitted the administrative record on June 4, 2007.[1] See HCN R. Civ. P. 63(D).
The petitioner next filed a timely Initial Brief on June 18, 2007. Id., Rule 63(E). The respondent, by and through Attorney James C. Ritland, filed a timely Reply [sic ] Brief on July 6, 2007.[2] Id. The petitioner filed his timely Response [sic ] Brief on July 12, 2007. Id. Neither party requested the ability to present oral argument, prompting the Court to determine the matter on the documentary materials. Id., Rule 63(G); Scheduling Order at 3.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. VI—Executive
Sec. 1. Composition of the Execut ive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be *217 called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Art. VII-Judiciary
Sec. 6. Po wers of the Tribal Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
Ch. V—Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 31. Employee Discipline.
a. Depending on the nature of the circumstances of an incident, discipline will normally be progressive and should bear a reasonable relationship to the violation. Based on the severity of the employee conduct, progressive discipline may not be applicable. Supervisors imposing discipline shall afford Due Process to the employee prior to suspending or terminating any employee. Types of discipline include:
(1) Suspension.
(2) Termination.
Subsec. 34. Administrative Review Process.
a. Policy.
(1) The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action. It is the policy of the Ho-Chunk Nation to afford all eligible employees who have been subject to suspension or termination a means of having the circumstances of such disciplinary action reviewed by an impartial and objective Grievance Review Board (Board).
(2) Employees are entitled to grieve suspensions or terminations to the Board. The Board will be selected from a set pool of employees and supervisors with grievance training, who will review a case and determine whether to uphold the discipline.
(3) Following a Board decision, the employee shall have the right to file an appeal with the Ho-Chunk Nation Trial Court (Court).
c. Notification of Disciplinary Action. At the time an employee is notified of disciplinary action, the employee shall be advised of his or her right to a hearing before the Grievance Review Board.
d. Request for a Hearing. An employee must request a hearing within five (5) business days of the date the disciplinary action was taken. At the time the employee requests a hearing, he or she must inform the Department of Personnel if he or she is to be represented by an attorney. If so, the attorney must also file for an appearance with Department of Personnel within five (5) days of the date the employee requested a hearing. Failure to request the hearing within this time frame will result i n the forfeiture of a hearing by the Board.
g. Proceedings of the Board. At the commencement of a hearing before the Grievance Board of Review [sic ], the Department of Personnel will discuss with the Board their responsibilities and obligations including, but not limited to, the following:
(5) The Board shall be responsible to make all relevancy determinations throughout the meeting. In making these determinations, the Board shall consider whether the proposed evidence (either witness testimony or documentary evidence) relates to the disciplinary *218 action and whether it will affect the Board’s recommendation. Only witnesses who have had direct involvement in the incident leading to the disciplinary action will be allowed to participate and all questions asked should directly relate to said disciplinary action.
(7) At the conclusion of the presentation of testimony and evidence, the Board will privately deliberate and make a decision within five (5) calendar days. No record of the Board’s deliberation will be made. The decision of the Board shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.
(8) The Board shall have the authority to direct the Executive Director of Personnel to execute the appropriate remedy consistent with the determination of the Board.
Subsec. 35. Judicial Review.
e. Under this limited waiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplement the record in the Trial Court, either with evidence or statements of their position. The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
DEPARTMENT OF JUSTICE ESTABLISHMENT & ORGANIZATION ACT OF 2001, 1 HCC § 8
Subsec. 4. Functions. The Department of Justice shall:
b. Provide expert legal advice and competent representation for all Branches of the Nation on those matters that concern the Nation’s interests and welfare.
C. Represent the Nation in Tribal, State, and Federal forums.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences i n accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend of a Motion for Reconsideration has elapsed, a party may file a Motion to Modifij with the Court. The Motion must *219 be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(1)(a)(i) or (ii), did not have proper service and did not appear i n the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
Rule 63. Judicial Review of Admin istra-tive Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
a. Employment Relations Act of 2004
(B) The Petition for Administrative Review shall identify the petitioner making the request by name and address. The Petition for Administrative Review must also contain a concise statement of the basis for the review, i.e., reason or grounds for the appeal, including a request to supplement the evidentiary record pursuant to HCN R. Civ. P. 63(D)(l)(a-b), if applicable. The statement should include the complete procedural history of the proceedings below. The petitioner must attach a copy of the final administrative decision to the Petition for Administrative Review.
(D) The commission or board, designated as the respondent, must transmit, the administrative record to the Court within fifteen (15) days after receipt of the Petition for Administrative Review. The administrative record shall constitute the sole evidentiary record for judicial review of the agency decision....
(E) Within thirty (30) calendar days of filing the Petition, for Administrative Review, the petitioner shall file a written brief, an Initial Brief .... The respondent *220 shall have thirty (30) calendar days after filing of the brief in-which to file a Response Brief. After filing of respondent’s Response Brief the petitioner may file the Reply Brief within ten (10) calendar days.
(F) The administrative record shall consist of all evidence presented to the agency, including but not limited to:
2. a transcript of the proceedings, which may be in digital or other electronically recorded format, sufficiently clear so that the Court may determine what transpired in the proceedings.
(G) At the discretion of the Court, the Court may require an oral argument. The Court shall decide the order of the presentation, the length of time each party is permitted for their presentation, the issues to be addressed in oral argument, and such other matters as may be necessary. An order entitled, Notice of Oral Argument, shall include all such matters and shall be served on all parties at least ten (10) calendar days prior to the date set for argument.
(H) The Court shall decide all cases upon the administrative record, briefs, memoranda and statements filed plus the oral argument, if heard.
(L) Either party may appeal the Trial Court’s decision to the Supreme Court.
RELEVANT LAW
HO-CHUNK NATION PERSONNEL POLICIES & PROCEDURES MANUAL (Updated Jan. 22, 2004)
Ch. 12 Employment Conduct, Discipline, and Administrative Review
Initiating Discipline: Considerations and Notice [p. 60]
Supervisory and management personnel should be guided in their consideration of disciplinary matters by the following illustrative, but not exclusive, conditions.
• The degree of severity of the offense
• The number, nature, and circumstances of similar past offenses
• Employee’s length of service
• Provocation, if any, contributing to the offense
• Previous warnings related to the offense
• Consistency of penalty application
• Equity and relationship of penalty to offense
ENTERPRISE EMPLOYEES ONLY [pp. 62-63]
The following Administrative Review Process is to be followed in seeking relief for all grievances. The burden of proof is on the grievant to show that what he/she is claiming, actually happened. All grievances will be courtesy copied to the Personnel Department promptly, by the grievant. This proof may include documentation and witness statements.
I. A grievance will be submitted directly to the immediate supervisor and the Personnel Department within five (5) calendar days of the disciplinary action by the grievant. The supervisor will meet with the General/Facility Manager to discuss and investigate the grievance. Together, the supervisor and the General/Facility Manager will document and sign the response within ten (10) calendar days of receipt. The grievant will be notified of the response by certified mail with a courtesy copy sent to the Personnel Department.
FINDINGS OF FACT[3]
1. The petitioner, Steven E. Garvin, is an enrolled member of the Ho-Chunk Na *221 tion, Tribal ID# 439A000954, and is employed as the Executive Manager of Majestic Pines Casino (hereinafter MPC), a division within the Ho-Chunk Nation Department of Business (hereinafter Business Department), located on trust lands at W9010 Highway 54 East, Black River Falls, WI 54615. See Dep’t of Bus. Establishment & Org. Act of 2001,1 HCC § 3.5c. The Business Department is an executive department with principal offices located on trust lands at Ho-Chunk Nation Headquarters, W9814 Airport Road, P.O. Box 667, Black River Falls, WI. See Constitution of the Ho-Chunk Nation, Art. VI, § 1(b). The Ho-Chunk Nation (hereinafter HCN or Nation) is a federally recognized Indian tribe. See 72 Fed.Reg. 13648 (Mar. 22, 2007).
2. The respondent, Jan Rousey, is a non-member, and is employed as a Security Officer at MPC. Decision, GRB-284-06-T (GRB, Apr. 18, 2007) (hereinafter Decision) at 1.[4]
3. On July 11, 2006, MPC Surveillance Division personnel informed the respondent that a patron was impermissibly taking photographs in M PC, and the respondent reacted by taking the offending cellular phone from a patron’s hand without permission. Thereafter, the respondent and another Security Officer, Charles Davis, informed the patron of the rule against taking photographs inside MPC, and returned the cellular phone to the patron after erasing the relevant photographs. Id. at 1-2.
4. Although the patron did not complain about the incident, former MPC Security Director, Tammie Módica, subsequently became concerned by the respondent’s action. Security Personnel possess no authority to confiscate a patron’s private property, and Director Mó-dica deemed that the respondent should have written a report. Id. at 2.
5. On July 31, 2006, Director Módica requested that the respondent write such a report, which the respondent subsequently accomplished on August 3, 2006. Id,
6. On August 7, 2006, Director Módica processed the respondent’s termination from employment after considering the respondent’s entire work record, which included two (2) previous suspensions i n January and May 2006. Ms. Módica conceded that the above incident would not have alone justified a discharge. Id. at 1-2; see also HCN Status Change Notice (Aug. 9, 2006).
7. The respondent timely grieved the termination to the GRB on August 9, 2006. HCN Grievance Form (Aug. 9, 2006); see also ERA, § 5.34c-d.
8. On April 12, 2007, the GRB conducted a hearing.[5] Decision at 1.
9. At the hearing, Security Shift Supervisor Cora Samples substantiated the policies regarding photography and property confiscation, but testified that “if a patron took a photograph of a non-sensi *222 tive area she would not write a report about the incident.”[6] Id. at 2. “[T]he patron was taking a picture of a group of friends” in a non-sensitive area. Id. at 3.
10. The GRB found that the respondent violated internal security policies, constituting a violation of the ERA. Id. at 2. However, the GRB focused upon the statutory direction that ‘‘discipline will normally be progressive and bear a reasonable relation to the violation,” and concluded that “the incident was a minor one and termination, even with two prior suspensions, does not bear a reasonable relationship to the violation.” Id. at 3 (quoting ERA, § 5.31a).
11. In regards to remedy, the GRB noted the following:
[therefore, we overturn the termination and reinstate him to his position. However, this incident will not be removed from Mr. Rousey’s file. The termination shall be reduced to a five-day suspension without pay. He is awarded bridge of service [sic ] credits however he will not receive seniority credit for the time in between his termination and reinstatement.
With respect to back pay, it is not clear whether the GRB can award back pay. Pursuant to 6 HCC § 5, Part 34(h) [sic ], we direct the Executive Director of Personnel to execute the appropriate remedy consistent with the determination of the Board.
Id. at 3.[7]
12.Prior to termination, the respondent earned $11.00 per hour in his position as MPC Security Officer. HCN Status Change Notice.
DECISION
The Court thoroughly examined the origin of administrative agency review and associated standards of review within a prior case. Regina K. Baldwin et al. v. Ho-Chunk Nation et ai, CV 01-16, -19, - 21 (HCN Tr. Ct., Jan. 9, 2002) at 12-26. The Court directs the parties to that decision for a comprehensive discussion.[8] For purposes of this case, the Court reproduces the portion of the discussion dealing with formal on the record adjudication.
Executive agencies may engage in formal on the record adjudication, resulting in the promulgation of rules through the formation of a body of case precedent. See, e.g., Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); Bowman Transp. v. Ark. Best Freight Sys., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In reviewing adjudicative rulemaking, as well as other forms of agency action, courts begin by recognizing that Congress intended the Administrative Procedure Act to “establish [ ] a scheme of ‘reasoned decisionmak-ing.’ ”[9] Allentown, 522 U.S. at 374, 118 *223 S.Ct. 818 (quoting Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Courts then perform a two-tiered analysis, determining whether the adjudicative rule satisfies a substantial evidence standard, and, if so, whether the rule escapes a designation of arbitrary and capricious.[10]
The two (2) inquiries represent “ ‘separate standards.’ ” Bowman, 419 U.S. at 284, 95 S.Ct. 438 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Consequently, a court “may properly conclude [ ] that, though an agency’s finding may be supported by substantial evidence, ... it may nonetheless reflect an arbitrary and capricious action.” Bowman, 419 U.S. at 284, 95 S.Ct. 438. In such an event, the Court would afford no deference to the adjudicative rule of the agency precisely because the rule could not withstand the more deferential arbitrary and capricious standard.
The substantial evidence standard has no application beyond the review of “record-based factual eonclusionfs],” and only in unusual circumstances wall agency action surviving a substantial evidence review falter when scrutinized further. Dickinson, 527 U.S. at 164, 119 S.Ct. 1816. In performing the second-tier of analysis, arbitrary and capricious review,
[a] reviewing court must “consider whether the decision was based on a consideration of the relevant factors and Whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.” The agency must articulate a “rational connection between the facts found and the choice made.” While [a court] may not supply a reasoned basis for the agency’s action that the agency itself has not given, [a court] will uphold a decision of less than ideal clarity if the agency’s path may reasonably be discerned.
Bowman, 419 U.S. at 285-86, 95 S.Ct. 438 (citations omitted).
Typically, however, a court will suspend its review after ascertaining the presence of substantial evidence. “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Edison Co. v. Labor Bd., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The relevant evidence must retain probative force, and, therefore, “[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence.” Id. at 230, 59 S.Ct. 206. And, a court must examine the evidence supporting the decision against “the record in its entirety, including the body of evidence opposed to the [agency’s] view.” Universal Camera Corp. v. Nat. Labor Relations Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); see also 5 U.S.C. § 706.
*224 Nonetheless, as noted above, an adjudicative rule rightfully subjected to the two-tiered analysis must also at its core represent the outcome of a reasoned deliberation. “[Tjhe process by which [an agency] reaches [its] result must be logical and rational.” Allentown, 522 U.S. at 374, 118 S.Ct. 818. Courts accordingly must insure compliance with the requirement of reasoned decision-making. In this regard,
[i]t is hard to imagine a more violent breach of that requirement than applying a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it... . The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel ..., and effective review of the law by the courts.
Id. at 374-75, 118 S.Ct. 818. The inconsistent or contrary application of an adjudicative rule must result in a finding that the agency has failed to support its action by substantia] evidence. A court cannot deem subsequent aberrations as simply agency interpretations of the underlying rule. Id. at 377-78, 118 S.Ct. 818.
To reiterate, a court must determine whether the challenged administrative action rests upon substantial evidence and escapes a characterization of arbitrary and capricious. Furthermore, the need for reasoned decision-making and the consistent application of resulting decisions underlie and overarch the statutorily based analysis. Apart from this predominate approach to agency review, instances exist when a court must designate an administrative decision as either contrary to law or otherwise not deserving of deferential treatment.
As noted above, the ERA attempts to limit the appellate role “to set[ting] aside or modify[ing] a Board decision if it was arbitrary and capricious.” ERA, § 5.35e. The ERA does not articulate the Court’s ability to set aside an agency decision that proves “contrary to law.” Compare Gaming Ordinance, § 1101 (c)(v). Such a seemingly broad recognition of judicial authority, however, does not invite or permit a de novo review in the context of a typical administrative review. That is to say, a court cannot bypass the obviously deferential standards of review when it perceives an isolated question of law. Rather, a court may only set aside an agency action as contrary to law when the agency clearly acts outside the parameters of its legislatively delegated authority. For example, this Court would not need to defer to a GRB decision that claimed to determine an enrollment issue under the guise of a Ho-Chunk preference grievance. Such a decision would certainly be struck down as contrary to law regardless of whether the HCN Legislature incorporated this provision in the standard of review paragraph. See Lonetree, SU 07-04 at 4 (noting appellate agreement with this premise).
Nowhere is this judicial authority more obvious than when a court encounters an administrative agency’s efforts to interpret and apply constitutional principles. “[C]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.” Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[11] The HCN *225 Legislature lacks the ability to confer constitutional adjudication authority upon an executive administrative agency, and the ERA does not purport to do so. Lonetree, SU 07-04 at 4-6. Any such attempt would prove inconsistent with the theoretical and legal underpinnings of administrative power. See Baldwin, CV 01-16, -19, -21 (HCN Tr. Ct., Oct. 3, 2003) at 15 n. 5.
In the instant matter, the petitioner urges the Court to abandon a deferential review of the GRB decision, arguing that “[t]he GRB exceeded its statutory authority in this case when it substituted its own judgment for that of the supervisor.” Initial, Br. at 2. The petitioner contends that the GRB may only “determine whether the facts suppo rt a, violation of the Employment Relations Act or applicable Unit Operating Rules,” and, if so determined, the agency’s role is at an end. Id. at 3 (quoting ERA, § 5.34g(7)) (emphasis in original). On the basis of this single provision, the petitioner concludes that “the GRB should not [have] substitute^] its judgment for that of a supervisor just because it, as a body, might have made a different disciplinary choice....” Id. at 4.
The petitioner additionally states that the GRB ignored the supervisor’s attempt to employ progressive discipline. The GRB’s decision is portrayed as “under-minfing] the notion of progressive disciplinary action.” Id. The petitioner posits that “[b]y the logic of the GRB, an employee could perform unlimited violations of the ERA, so long as they were minor and so long as none were sufficient to warrant termination immediately.” Id. To the contrary, the GRB dearly acknowledged the existence of the prior disciplinary action, but determined that the disciplinary action “d[id] not bear a reasonable relationship to the violation.” Decision at 3 (quoting ERA, 5.31a). Nonetheless, the petitioner believes that the GRB does not possess the statutory authority to make this distinction, whereas the respondent asserts otherwise. Reply Br. at 2-3.
The respondent points to other statutory provisions that confer broad discretion upon the GRB to review disciplinary actions and award appropriate relief. Id. at 2 (citing ERA, § 5.34a(1), h). The GRB maintains the ability to determine the relevancy of the evidence, considering whether it “relates to the disciplinary action and whether it will affect the Board’s recommendation.” ERA, § 5.34g(5). Following the presentation of evidence and deliverance of oral argument, the GRB, as correctly stated by the petitioner, shall “determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.” hi, § 5.34g(7). The parties diverge after reaching agreement on this premise with the respondent asserting instead that the GRB determined that the facts did establish a violation of the ERA in a key respect. To reiterate, the GRB concluded that the discharge “d[id] not bear a reasonable relationship to the violation.” Decision at 3 (quoting ERA, 5.31a).
Despite the petitioner’s insistence that the GRB “exceed[ed] its granted authori *226 ty,” the Court cannot concur with this assertion. Resp. Br. at 1. The Court consequently declines to ascribe the GRB action as contrary to law.[12] Therefore, the Court applies the two-tiered standard of review discussed above. In doing so, the Court is incapable of declaring the GRB action as either lacking substantial evidence or proving arbitrary or capricious. The GRB decided that the termination proved unreasonable. The Court obviously cannot find fault with a decision arising from the agency’s exercise of discretion.
The petitioner believes that this decision should rest entirely with the supervisor, and that the GRB cannot “substitute its judgment for that of the supervisor.” Resp. Br. at 4. While acknowledging the “broad, if ambiguous, authority [of the GRB] to enter an appropriate remedy,” the petitioner desires to curtail such authority although lacking statutory authority for this proposition. Id. (citing ERA, § 5.34h). The Court, therefore, shall abide by the Supreme Court’s announced rule of judicial restraint, ie., “it is not the Court’s job to essentially rewrite legislation by interpreting the law so broadly as to change its meaning.” Robert Gerhartz v. HCN Gaming Comm’n, SU 06-06 (HCN S.Ct., July 3, 2007) at 5; see also Funmaker, SU 07-05, 7 Am. Tribal Law at 66.
The GRB now acts as the first level of review of supervisory decisions affecting an individual’s property right in employment. Under prior law, a terminated employee could proceed through an administrative grievance process beginning with an appeal to one’s supervisor. HCN Pees. Policies & Peoceduees Manual, Ch. 12 at 62-63. The administrative hierarchy possessed the authority to reverse a disciplinary action that did not conform to stated disciplinary considerations. M at 60. The GRB has supplanted this process, and a grievant’s only recourse is to “request a hearing within five (5) business days of the date the disciplinary action was taken.” ERA, § 5.34d. Absent statutory clarification by the HCN Legislature, the Court shall not deprive the GRB of its discretion to review and permissibly rectify inappropriate supervisory decisions. Id., § 5.34a(1), h.
The Court previously acknowledged that it was “ill-equipped to substitute its opinion for certain discretionary decisions of the employer,” despite having no legal obligation to defer to the supervisory determinations. Sherry Fitzpatrick v. Ho-Chunk Nation et al., CV 04-82 (HCN Tr. Ct., Feb. 20, 2006) at 14. The ERA has changed the legal landscape, and the Court must now defer to similar GRB decisions. ERA, § 5.35e. The Supreme Court recognizes that “[w]hen reviewing administrative decisions, the Trial Court plays the role of an appellate court and is not charged with finding facts. The GRB, with its greater expertise and familiarity, is the appropriate body to find facts.” Funmaker, SU 07-05, 7 Am. Tribal Law at 68; see also ERA, § 5.34a(2). The GRB deemed the respondent’s disciplinary action as unreasonable in light of the established facts, and the Court shall not upset this determination.
The Court, therefore, denies the Petition, and directs the GRB to proceed with the remedial phase in accordance with recent Supreme Court precedent. See Fun-maker, SU 07-05. The Court requests that the GRB inform it of the timeframe in which it can accomplish adherence with this judgment. The GRB shall file such *227 notice within fifteen (15) days of the issuance of this decision.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment, or Order. Otherwise, “[t]he time for taking an appeal shall begin from the date the judgment is filed with the [Trial Court] Clerk [of Court].” HCN R. Civ. P. 57. Since this decision represents a non-final judgment, “[a]n appeal from [this] interlocutory order maybe [sic ] sought by filing a petition for permission to appeal with the Supreme Court Clerk within ten (10) calendar days after the entry of such order with proof of service on all other parties to an action.” Ho-Chunk Nation Rules of Appellate Procedure, Rule 8.[13]
IT IS SO ORDERED this 19th day of October 2007, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The Ho-Chunk Nation Supreme Court (hereinafter Supreme Court) appropriately remarked that "[t]he word, 'appeal,' generally assumes that a party is seeking reversal of a lower court or agency's decision." Janet Funmaker v. Libby Fairchild, in her capacity as Executive Dir. of HCN Dep't of Pers., et at, SU 07-05, 7 Am. Tribal Law 61, 65, 2007 WL 5627246 (HCN S.Ct., Aug, 31, 2007). In terms of administrative appeals, the petitioner should designate the agency as a named party respondent since presumed a participant in the action. See Willard Lonetree v. Larry Garvin, in his official capacity as Executive Dir. of HCN Heritage Pres., SU 06-74 (HCN S.Ct., Mar. 9, 2007) at 10 n. 3, aff'd, SU 07-04 (HCN S.Ct., Oct. 6, 2007); see also Patricia A. Lowe-Ennis v. Cash Systems, Inc., CV 06-41 (HCN Tr. Ct., Nov. 8, 2006). Unlike the Lon-etree case, however, the DOJ does not voluntarily represent the GRB in this appeal, but instead represents only the petitioning party. Yet, the DOJ has an obligation to provide legal services to both tribal entities and officials. DOJ Establishment* Org. Act of 2001, 1 HCC § 8.4b-c. The DOJ seemingly abandons its obligation to the GRB, "an agency within the [Ho-Chunk Nation] Department of Personnel,” preferring to advocate on behalf of a position contrary to that of the agency. Funmaker, SU 07-05, 7 Am. Tribal Law at 64. Moreover, the petitioner cannot gain the requested relief from the named respondent since such individual maintains no authority to reverse the GRB determination. See Timothy G. Whiteagle et al. v. Alvin Cloud, Chairman of the Gen. Council of Oct. II, 2003, in his official capacity, et al., SU 04-06 (HCN S.Ct., Jan. 3, 2005) at 12 (citing IICN Legislature v. HCN Gen. Council et a!., CV 01-11, 3 Am. Tribal law 393, 403, 2001 WL 36153849 (HCN Tr. Cl., June 22, 2001)). The Court shall nonetheless proceed to the merits of this appeal due to the general ease with which the Court affirms the GRB decision.

. The respondent previously submitted a June 20, 2007 response entitled, Petition for Administrative Review, which if intended as an appeal was filed untimely. ERA, § 5.35c; HCN R. Civ. P. 63(A)(1)(a).

. The Court does not perform a de novo review of administrative agency decisions, and, *221 consequently, generally refrains from making independent factual findings. ERA, § 5.35e. Unless otherwise clearly indicated, the below findings of fact constitute relevant findings of the administrative agency for purposes of this judgment as articulated within the administrative decision. The Court shall only propose alternative findings of fact in the event that the agency’s factual rendition is not supported by substantial evidence. See infra p. 223.

. The ERA requires the GRB to issue a decision within five (5) calendar days of the hearing. ERA, § 5.34g(7),

. The ERA does not establish a timeframe in which the GRB must convene a hearing after receiving a grievance. In this instance, 246 days elapsed before the hearing.

. The petitioner contends that Supervisor Samples instead testified that she would have written a report, but the petitioner failed to present either a transcript or recording of the April 12, 2007 hearing. Pet. at 2. Perhaps, the petitioner’s designation of parties, coupled with the uncertain role of the DOJ, resulted in the omission. See HCN R. Civ. P. 63(D), (F)(2).

. The quoted statutory provision is properly identified as a paragraph, not a part. Legislative Organization Act of 2001, 2 HCC § 11.35d(6).

. The full text of Baldwin appears at www.ho-chunknation.com/?PageID = 156.

. The HCN Legislature has incorporated the acknowledged federal standards within certain legislation. See, e.g., Gaming Ordinance, § 1101 (c)(v); compare 5 U.S.C. § 706.

. The ERA directs that ‘‘[t]he Trial Court may only set aside or modify a Board decision if it was arbitrary and capricious.” ERA, § 5.35e; but cf. Amended & Restated Gaming Ordinance of the Ho-Chunk Nation (hereinafter Gaming Ordinance), § 1101(c)(v). Nonetheless, the Court shall continue to engage in the two-tiered analysis due to the inseparable components of the inquiry. Furthermore, some federal courts have denoted a convergence of the standards, making any analytical distinction unattainable. See, e.g., Aircraft Owners & Pilots Ass'n v. FAA, 600 F.2d 965, 971 n. 28 (D.C.Cir. 1979) (describing the distinction as “largely semantic”). This Court disagrees with this assessment, at least in the context of formal on the record adjudication, but it reveals the interrelatedness of the two standards.

. The following federal circuit court assessments reinforce this unassailable premise. ‘‘[A]s a general rale, an administrative agency is not competent to determine constitu *225 tional issues.” Petruska v. Gannon Univ., 462 F.3d 294, 308 (3rd Cir.2006). “To be sure, administrative agencies ... cannot resolve constitutional issues. Instead, the premise of administrative exhaustion requirements for petitioners with constitutional claims is that agencies may be able to otherwise address petitioners’ objections, allowing the courts to avoid unnecessary constitutional decisions." Am. Coalition for Competitive Trade v. Clinton, 128 F.3d 761, 766 n. 6 (D.C.Cir.1997). “[A] reviewing court owes no deference to the agency's pronouncement on a constitutional question.” Lead Indus. Assoc., Inc. v. EPA, 647 F.2d 1130, 1173-74 (D.C.Cir.1980).

. The petitioner advocates the usage of a de novo review standard, but cites absolutely no authority tor this position. Resp. Br. at 1-2, 4; Initial Br. at 1.

. Parties can obtain a copy of the applicable rules by contacting the Ho-Chunk Nation Judiciary at (715) 284-2722 or (800) 434-4070 or visiting the judicial website at www.ho-chunknation.com/?PageID = 123.