DECISION
PER CURIAM.
Background
On May 23, 2005, Darren Brinegar was hired as the general manager of DeJope Bingo. He signed a contract that was to be in effect for one year. Petitioner’s List of Exhibits to Supplement the Administrative Record (Hereinafter PLESAR) CV08-05 (HCN Tr. Ct„ July 8, 2009) at Exhibit B. On October 12, 2005, Brinegar was transferred to Rainbow Casino and signed a contract to become the ‘general manager’ of Rainbow Casino. Again, the contract was to be in effect for only a year. The contract stated that it would end on September 30, 2006 unless it was renegotiated. Id., at Exhibit C. Both contracts stated that Mr. Brinegar could not be fired without cause or prior notice. Though the contract with Rainbow Casino stated that Mr. Brinegar would be ‘general manager’, his notice of transfer to Rainbow Casino referred to him as the ‘executive manager.’ Id., at Exhibit D. Mr. Brinegar’s Ho-Chunk Nation Employee Status Change Notice also referred to his position as ‘executive manager.’ Id., at Exhibit H. As of December 17, 2003, the Ho-Chunk Nation had passed a law making all executive managers of casinos at-will employees. Id., Exhibit K. On January 22, 2004. the Ho-Chunk Nation passed two related resolutions for the position Executive Manager—Casino, 1.22.04A denoting “NOTE: This position has been designated as an At-Will position” and 1.22.04B denoting “Salary: Negotiable”.
On May 6, 2008, Mr. Brinegar’s superi- or, Joseph Decorah, informed him that if he did not resign immediately, he would be fired. Mr. Decorah did not state a reason for this demand. Decision, GRB-051-08DH (GRB, July 30, 2008) (hereinafter Oe- *139 cisión) at 1-2. Furthermore, Mr. Decorah threatened to challenge Mr. Brinegar’s unemployment claims unless he resigned. On May 7, 2010, Mr. Brinegar submitted his letter of “forced resignation,” stating that he was only resigning because otherwise he was going to be fired and did not want his unemployment challenged. PLE-SAR at Exhibit I.
Mr. Brinegar timely filed his grievance with the Ho-Chunk Nation Grievance Review Board (hereinafter GRB) on May 15, 2008. Decision at 1. The GRB found that “The Board is not empowered to determine by interpretation if placing an ultimatum before an employee to resign or be terminated is against the law.” Decision at 3. Thus, the Board found that Mr. Brinegar could not grieve his termination, since it was a voluntary resignation. Decision at 1. Mr. Brinegar filed a timely Petition for Administrative Review on August 26, 2008. Order (Final Judgment) CV08-50 (HCN Tr. Ct„ Feb. 19, 2010) at 1. The lower court found that Mr. Brinegar had no property interest in his job because he was an at-will employee, and that he could not argue constructive discharge because he could not show a public policy violation. Id.
The Appellant timely filed a Notice of Appeal on April 15, 2010. The court issued a Scheduling Order accepting the case on April 17, 2010. Scheduling Order SU10-01 (HCN S.Ct., April 17, 2010). On July 28, 2010, the Appellee in this case, through Attorney Heidi Drobnick, filed a Notice and Motion to Re-caption Case and a Notice and Motion for Expedited Consideration for case SU 10-01. This change was required by a ruling in the lower court, Ho-Chunk Nation v. Ho-Chunk Grievance Review Board and Ginny Stenroos, CV 10-07 (HCN Tr. Ct., April 26, 2010). This Court issued an Order Granting Notice And Motion To Re-Caption Case and Notice And Motion For Expedited, Consideration, SU10-01 (S.Ct., July 28, 2010), recaptioning the case formerly known as Darren Brinegar v. The Ho-Chunk Nation Grievance Review Board, to Darren L. Brinegar v. Business Department and Joseph Decorah. On July 30, 2010, this Court convened oral arguments.
Issues
I. Was Brinegar an at-will employee or was he protected by the Employment Relations Act of 2006?
The definition of an at-will employee given in the ERA is:
An employee who is subject to termination with or without cause or notice. The Employee also has the right to leave at any time for any or no reason or notice. At-will employees include Executive Managers of the Nation’s Gaming Facilities and Managers of the non-gaming revenue generating facilities. The At-Will Employee classification will be stated on the employee’s job description. ERA § 5.2.1G).
Initially, this Court looked at the tribal resolutions that defined the job position in question. The first resolution, 12.17.03B resolved that the position of Executive Manager-Casino shall be an at-will classification but was not stated in the job description for the executive manager of a casino, in violation of the ERA. PLESAR at Exhibit A. However, the Nation’s Legislature passed subsequent resolutions 1.22.04A and 1.22.04B. The Appellee’s evidence did show a newer version of the ‘executive manager’ job description which does include the “at-will” designation. This document was submitted into the record during the lower court review. Moreover, the ERA itself does state that the ‘executive manager’ position is at-will. The trial court found that Appellant was *140 an “at-will” employee and this Court concurs.
Parties agreed that the Appellant could be terminated. Appellant began the argument, he should have received a reason of terminated and further he had a 10-day period to cure the conduct constituting cause for termination. The Court suspects he furthered this 10-day period to cure argument based on the contracts he entered with the Nation to hold his position. So, this Court will discuss the contracts. Appellant also contended that he did not know of the “at will” status based on employment agreement. This Court will next discuss whether the Appellant only learned of his “at-will” status just prior to the Grievance Review Board hearing as was indicated.
The Appellant argued the contention over if he was an ‘executive manager’ considering both employment contracts which he signed call him a ‘general manager’. While it seems likely looking at the administrative record that Appellant’s superiors intended to hire him as an ‘executive manager’ at Rainbow Casino based on the Employee Status Change form indicating these changed assignments, no one updated the contract to reflect the job title. After sending Appellant the notice that he was to be reassigned to the position of ‘executive manager’ at Rainbow Casino, the Nation proceeded to sign a contract with Appellant employing him as the ‘general manager’ at Rainbow Casino. The Nation is a sophisticated party, their error in forming this employment contract with the wrong title in the first contract and again in the second contract is understandably misleading.
The Appellee asserts that the two contracts were illegal and claims that the legislature did not delegate the authority to enter into the contracts to the Nation’s representatives who signed them with Appellant. The first contract was signed by Ona Garvin, while the second was signed by George R. Lewis. Below the names on both contracts are the words “Tribal Representative.” Even if the legislature had not truly authorized these contracts, are they still be bound by apparent authority if these people to hold themselves out as tribal representatives and sign contracts. The record is absent about whether the Nation did nothing to inform others of the contracts’ lack of legitimacy or to stop these illegitimate contracts from being created. This Court need not address the legitimacy of the contract since both contracts had expired prior to the incident at hand.
Appellant claims that once the contracts expired, it continued from month to month like a tenant-landlord contract. However, this argument is flawed for several reasons. First, the analogy from tenant law to employment law is weak. As well, the Appellant has not provided a reason that the Ho-Chunk should adopt this law from a foreign jurisdiction. Both contracts that Appellant signed, the first at DeJope Bingo and the second at Rainbow Casino, stated that they would expire at the end of one year. The second contract plainly stated that it, and its terms, would end on September 30, 2006. After the contract terms ended, Appellant continued to operate under the same position. By the time the Appellant had the confrontation with Mr. Decorah, well more than one year had passed since the second contract had expired. Therefore, with the terms of the contract expired, he could not have expect a reason of termination nor 10 day period to cure the conduct constituting cause for termination were not required.
Additionally, the Appellant argued his job was reclassified by his superiors, his reclassification violated the ERA. The ERA provides that in order for a position *141 to be reclassified, the request for the reclassification must “be substantiated in writing with such specific details given to those duties and responsibilities being performed continuously for six (6) months that are different in scope from those contained in the applicable job description.” ERA 3.8.(c), The reclassification of the job position that the Appellant accepted occurred before his initial employment contract informing him that he was to become an ‘executive manager’ stated, “Effective October 9, 2005, you will be permanently reassigned to the position of Executive Manger-Casino at Rainbow Casino. I look forward to working with you in your new position.” PLESAR at Exhibit D. Hence, the letter transferring Appellant to the position of ‘executive manager’ was abbreviated but with this evidence it cannot be considered a violation of the ERA.
Another Appellant claim was that the memorandum sent from Libby Fairchild to Silas Cleveland referring to him as a permanent employee negated him as an at-will employee. PLESAR at Exhibit G. This memorandum does not bear scrutiny. Nothing in the ERA states that a permanent employee cannot also be an at-will employee.
Was the Appellant knowingly an at-will employee? The Appellant alleged that he did not know he was an at-will employee because the two contracts stated the positions “general manager” and not “executive manager”. The Appellant argued that as a general manager he is not an at-will position. Furthermore, he asserted that his “yes” response in the GRB hearing was based on learned knowledge just prior to the July 30, 2008 GRB hearing. Yet, the Appellant’s forced resignation, dated two month earlier, included his title “Executive Manager” with his signature. PLESAR at Exhibit I. This Court finds that the Appellant knew his official title and knew his at-will status.
This Court agrees with the lower court that the Appellant (petitioner) was an at-will employee dischargeable for any reason or no reason at all, since there was no proof of discrimination or harassment. His supervisor was under no obligation to offer the Appellant (petitioner) any reason or anything else.
Did the employer constructively discharge Brinegar?
The Appellant contended that the lower court decision erred because the Nation not extend the protection under construction discharge. In all, the Appellant believed he had protection of ERA right to grieve a termination, disguised as a voluntary resignation. Was there a constructive discharge, an actual termination, or a voluntary resignation?
This court must first look at this case on the issue of constructive discharge, there is a three part test for determining if constructive discharge was present, which is laid out in Maureen Arnett et al. v. HCN Dep’t of Admin., CV 00-06, -65 (HCN Tr. Ct. Jan. 8, 2001). The test was reiterated in Kristin K. White Eagle v. Ho-Chunk Nation Grievance Review Board, CV 08-17 (HCN Tr. Ct., Apr. 22, 2009). The three parts of the test are:
(1) the actions and conditions that caused the employee to resign were violative of [fundamental] public policy
(2) these actions and conditions were so intolerable or aggravated at the time of the employee’s resignation that a reasonable person in the employee’s position would have resigned; and
(3) facts and circumstances showing that the employer had actual .... knowledge of the intolerable actions and conditions and of their im *142 pact on the employee and could have remedied the situation, Arnett v. HCN Dep’t of Admin., at 16.
Knowing the three-part test, it was argued that his firing was in violation of public policy because Mr. Decorah was trying to circumvent the Nation’s rules, which give certain rights to terminated employees, by forcing him to resign rather than terminating him. It was not necessary for the supervisor to approach the Appellant in the manner he did with regards to this action, especially since it was not necessary realizing that the contract expired. It is not against public policy to give the choice of resignation or termination for “at-will” employees. This Court must affirm the lower courts determination Appellant failed the Arnett test.
The issue of res judicata is at play here as well. In Kristin K. White Eagle v. Ho-Chunk Nation Grievance Review Board, CV 98-07 (HCN Tr. Ct., April 22, 2009), the court ruled that an at-will employee could not prove constructive discharge for being confronted with an ultimatum to resign now or be fired, as forcing an employee to resign with such an threat was not against public policy.
The Trial Court, quoting from Dan M. Sine v. Jacob Lonetree, as President of the Ho-Chunk Nation, CV 97-143 (HCN Tr. Ct., Aug, 3, 1998), decided that an at-will employee “maintains no property interest in his or her continued employment.” Darren Brinegar v. Ho-Chunk Nation Grievance Review Board, CV 08-50 (HCN Tr. Ct, Feb. 19, 2010) at 13. Hence, because he holds no property interest in his employment, a terminated employee cannot grieve his separation from it.
The Trial Court also stated that “The petitioner was an at-will employee dis-chargeable for any reason or no reason at all.” Id., at 17. However, this statement is clearly so simply defined. An employee, even an at-will employee, cannot be discharged for “any reason.” The ERA provides a list of unacceptable forms of discrimination:
with the exception of Ho-Chunk Preference in Employment as set forth in paragraph (b) below, it will be a violation of this Act to discrimination based on an individual’s sex, race, religion, national origin, pregnancy, age, marital status, sexual orientation, or disability. ERA § 5.5a.
If an at-will employee is fired for any one of these reasons, he would need the right appeal his firing. In the matter beforehand, although the Appellant filed his complaint under the auspice of harassment and discrimination, no such argument was present.
CONCLUSION
The Trial Court’s Order (Final Judgment) is affirmed. As a final decision, it is binding on all parties.
EGI HESKEKJET.