*289 ORDER
(Granting Motion)
TODD R. MATHA, Chief Judge, and AMANDA L. ROCKMAN, Associate Judge.
INTRODUCTION
The Court must determine whether the administrative agency remains an indispensable party upon appeal of the agency decision. The Court had adopted a uniform practice of requiring participation of the agency pursuant to applicable procedural rule. The Court further recognized constitutional reasons for agency inclusion, but these concerns have dissipated over time. After careful and exhaustive consideration, the Court decides to permit agency intervention upon appeal, but shall no longer mandate involvement. The analysis of the Court follows below.
PROCEDURAL HISTORY
On June 9, 2010, the Court, Associate Judge Amanda L. Rockman presiding, issued a decision in the first captioned case requiring that the parties obtain substitute legal counsel. Order (Regarding Conflicts of Interest), CV 10-07 (HCN Tr. Ct, June 9, 2010) (determining that the Ho-Chunk Nation Department of Justice could not concurrently assert claims against its institutional clients without the presence of an internal attorney screening device). Subsequently, the Court perceived a repetition of the offensive conduct within its pending administrative caseload. The Court re *290 acted by convening a joint Status Hearing in the first four (4) captioned cases after providing proper notice of the proceeding. Order (Status Hr’g), CV 10-07, -12, -28, - 33 (HCN Tr. CL, July 21,2010).
At the Hearing, the institutional parties, including the Ho-Chunk Nation Grievance Review Board (hereinafter GRB), by and through Attorney William F. Gardner, sought to remove the GRB as a party within certain administrative appeals. Status Hr’g (LPER, Aug. 2, 2010, 02:10:12 CDT); see also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 18 (permitting motions in open court). The Court accordingly imposed a stay of the individual cases pending further review and decision. Order (Stay of Proceedings), CV 10-07, -12, - 28, -33 (HCN Tr. CL, Aug. 5, 2010). Thereafter, the Court consolidated the latter three (3) captioned cases given the common question of law before the Court. See, e.g., Order (Imposing Stay), CV 10-76 (HCN Tr. CL, Sept. 9, 2010); see also HCN R. Civ. P. 47(A).
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Pmbl. We the People, pursuant to our inherent sovereignty, in order to form a more perfect government, secure our rights, advance the general welfare, safeguard our interests, sustain our culture, promote our traditions and perpetuate our existence, and secure the natural and self-evident right to govern ourselves, do ordain and establish this Constitution of the Ho-Chunk Nation.
Art. Ill—Organization of the Government
Sec. 1. Sovereignty. The Ho-Chunk Nation possesses inherent sovereign powers by virtue of its self-government and democracy.
Sec. 3. Separation of Functions. No branch of government shall exercise the powers or functions delegated to another branch.
Sec. 4. Supremacy Clause. This Constitution shall be the supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.
Art. IV—General Council
Sec. 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Art. V—Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(a) To make laws, including codes, ordinances, resolutions, and statutes;
(b) To establish Executive Departments, and to delegate legislative powers to the Executive branch to be administered by such Departments, in accordance with the law; any Department established by the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
(f) To set the salaries, terms and conditions of employment for all government personnel;
(h) To enact all laws prohibiting and regulating conduct, and imposing penalties upon all persons within the jurisdiction of the Nation;
*291 Art. VI—Executive
Sec. 1. Composition of the Executive.
(b) The Executive Branch shall be composed of any administrative Departments created by the Legislature, including a Department of the Treasury, Justice, Administration, Housing, Business, Health and Social Services, Education, Labor, and Personnel, and other Departments deemed necessary by the Legislature. Each Department shall include an Executive Director, a Board of Directors, and necessary employees. The Executive Director of the Department of Justice shall be called the Attorney General of the Ho-Chunk Nation. The Executive Director of the Department of Treasury shall be called the Treasurer of the Ho-Chunk Nation.
Sec. 2. Powers of the President. The President shall have the power:
(a) To execute and administer the laws of the Ho-Chunk Nation;
(d) To administer all Departments, boards, and committees created by the Legislature;
Art. VII—Judiciary
Sec. 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and laws of the Ho-Chunk Nation.
Sec. 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Sec. 6. Powers of the Trial Court.
(a) The Trial Court shall have the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and in equity including injunctive and declaratory relief and all writs including attachment and mandamus.
(b) The Trial Court shall have the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with this Constitution.
Sec. 7. Powers of the Supreme Court.
(a) The Supreme Court shall have the power to interpret the Constitution and laws of the Ho-Chunk Nation and to make conclusions of law. The Supreme Court shall not have the power to make findings of fact except as provided by enactment of the Legislature.
(b) The Supreme Court shall have the power to establish written rules for the Judiciary, including qualifications to practice before the Ho-Chunk courts, provided such rules are consistent with the laws of the Ho-Chunk Nation.
Art. X—Bill of Rights
See 1. Bill of Rights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
Art. XI—Statutes and Resolutions
Sec. 1. Statutes. All final decisions of the Legislature on matters of permanent interest shall be embodied m statutes. Such *292 enactments shall be available for inspection by members of the Nation during normal business hours.
Sec. 2. Resolutions. All final decisions on matters of temporary interest where a formal expression is needed shall be embodied in a resolution, noted in the minutes, and shall be available for inspection by members of the Nation during normal business hours.
HO-CHUNK NATION JUDICIARY ESTABLISHMENT AND ORGANIZATION ACT, 1 HCC § 1
Subsec. 5. Rules and Procedures.
c. The Judiciary shall have exclusive authority and responsibility to employ personnel and to establish written rules and procedures governing the use and operation of the Courts.
d. All matters shall be tried in accordance with the Ho-Chunk Rules of Procedures and the Ho-Chunk Rules of Evidence which shall be written and published by the Supreme Court and made available to the public.
DEPARTMENT OF PERSONNEL ESTABLISHMENT AND ORGANIZATION ACT OF 2001,1 HCC § 10
Subsec. 4. Functions. The Department of Personnel shall:
a. Manage the implementation of personnel codes and regulations.
b. Ensure adherence to consistent policies and procedures.
c. Promulgate employee handbooks with pertinent personnel policies and procedures.
EMPLOYMENT RELATIONS ACT OF 2004, 6 HCC § 5
Ch. 1—General Provisions
Subsec. 2. Purpose. This Act establishes uniform employment practices throughout the Ho-Chunk Nation in the utilization of human resources in the achievement of the desired goals and objectives of the Nation.
Subsec. 4. Responsibilities.
a. Department of Personnel. The Department of Personnel Establishment and Organization Act (1 HCC § 10) delegates to the Executive Director of the Department of Personnel the functions and authority to implement, manage, enforce, and promulgate!,] i.e.[,] create, establish, publish, make known and carry out the policies within this Act.
Ch. II—Definitions
Subsec. 7. Definitions. Whenever the following terms are used in this Act, they shall have the meanings indicated.
o. Employee. Any individual employed by the Ho-Chunk Nation, regardless of the source of funds by which the employee is paid. The term “employee” shall include any person elected or appointed. The Nation further classifies its employees as follows:
(2) Contract Employee. An employee who has entered into a contractual employment agreement with the Ho-Chunk Nation. All such contracts shall conform with all Resolutions and/or laws passed by the Legislature with respect to the contracting process.
(6) Limited Term Employee (LTE). An employee holding a job of limited or specified duration. Limited Term Employees are not regular employees eligible to use the Administrative Review Procedure to file formal grievances, except in matters pertaining to prohibited discrimination or harassment. Other complaints may be filed with the Grievance Review Board. Limitation of LTE status is 480 hours per fiscal year, unless a one-time 160 hour extension is approved by the Executive Director and *293 the Director, Department of Personnel or his or her designee.
v. Grievance. A claimed violation, misinterpretation, or inequitable application of the policies and procedures having a direct adverse effect on the grieving employee.
Ch. Ill—Employment Policies
Subsec. 9. Probationary Period.
a.Initial Probationary Period. New hire and rehired employees without Bridge Service Credit rights shall serve an Initial Probationary Period of 90 days. During an Initial Probationary Period, an employee is not eligible for annual leave, sick leave, and other benefits paid for or sponsored by the Nation, unless otherwise specified. An exception to this restriction is the taking of Waksik Wosga Leave by Tribal employees. The probationary employee may not grieve, except in matters pertaining to prohibited discrimination or harassment.
Ch. V—Work Rules & Employee Conduct, Discipline, & Administrative Review
Subsec. 33. Grievances.
a. Employees may seek administrative and judicial review only for alleged discrimination and harassment.
b. Initial Probationary or Limited Term Employees may not grieve on any matters, save those listed in paragraph a, above.
d. Candidates for employment may file a complaint with the Department of Personnel regarding the interview and selection process and may elect to file a complaint directly with the Grievance Review Board.
Subsec. 34. Administrative Review Process.
a. Policy.
(1)The Department of Personnel will take all reasonable steps to investigate any incident, which has resulted in disciplinary action. It is the policy of the Ho-Chunk Nation to afford all eligible employees who have been subject to suspension or termination a means of having the circumstances of such disciplinary action reviewed by an impartial and objective Grievance Review Board (Board).
(2) Employees are entitled to grieve suspensions or terminations to the Board. The Board will be selected from a set pool of employees and supervisors with grievance training, who will review a case and determine whether to uphold the discipline.
(3) Following a Board decision, the employee shall have the right to file an appeal with the Ho-Chunk Nation Trial Court (Court).
b. Grievance Review Board. There shall be a Grievance Review Board to hear grievances for both non-supervisory and supervisory employees. The Grievance Review Board [sic ] purpose is to hear employment related law suits as authorized in the ERA, known as grievances, in order to efficiently resolve such actions.
c. Notification of Disciplinary Action. At the time an employee is notified of disciplinary action, the employee shall be advised of his or her right to a hearing before the Grievance Review Board.
d. Request for a Hearing. An employee must request a hearing within five (5) business days of the date the disciplinary action was taken. At the time the employee requests a hearing, he or she must inform the Department of Personnel if he or she is to be represented by an attorney. If so, the attorney must also file for an appearance with Department of Personnel within five (5) days of the date the employee requested a hearing. Failure to request the hearing within this time frame *294 will result in the forfeiture of a hearing by the Board.
e. Witnesses and Evidence.
(1) Ten (10) days prior to the hearing, the employee and supervisor shall each provide the Department of Personnel with a list of all witnesses they intend to call at the hearing. They shall also present copies of any documentary evidence that they would like to submit to the Board.
(2) Both parties may amend or supplement their original witness list and/or submit additional documentary evidence within five (5) days after receiving the other party’s list of witnesses and evidence.
f. Hearing Procedure.
(1) Review of Record. The Board will convene to review the records submitted to the Board prior to appearance by the grievant and supervisor to present their cases. Staff of the Department of Personnel shall also appear and be available to advise all participants with regard to policy and procedure.
(2) Supervisor’s Presentation. The supervisor or his or her representative shall present to the Board the reasons why management believes that the disciplinary action should be upheld. The supervisor or representative may call witnesses at this time. This presentation shall not exceed two hours without the Board’s permission.
(3) Employee’s Presentation. When the supervisor’s presentation has concluded, the employee shall present to the Board the reasons why he or she believes that the disciplinary action should by upheld. The employee may call witnesses at this time. This presentation shall not exceed two hours without the Board’s permission.
(4) Questions.
(a) Both parties shall have the right to ask questions of any witnesses.
(b) The Board members may ask questions of either party and may call for any additional information as they deem necessary in reaching a decision. If it requires information that is not readily available, the Board may accept into the record such additional information or choose to suspend the meeting and reconvene when the information is available.
(5)Final Comments. After both parties have made their presentations, and if the Board has no additional questions, then both parties shall have the opportunity make [sic] brief and concise final comments not to exceed fifteen minutes without the Board’s permission.
g.Proceedings of the Board. At the commencement of a hearing before the Grievance Board of Review [sic ], the Department of Personnel will discuss with the Board their responsibilities and obligations including, but not limited to, the following;
(1) The proceedings are confidential.
(2) The proceedings, except for deliberations, will be tape-recorded.
(3) The Board may ask questions of either party and request additional evidence at any time.
(4) The Board may instruct the parties that it has heard sufficient information to make a recommendation, or that the information being offered is not relevant. Aside from relevancy issues, formal rules of evidence do not apply. The Board has the authority to extend/waive time limitations if it believes that the information offered is relevant and probative of the issues presented as defined below.
(5) The Board shall be responsible to make all relevancy determinations *295 throughout the meeting. In making these determinations, the Board shall consider whether the proposed evidence (either witness testimony or documentary evidence) relates to the disciplinary action and whether it will affect the Board’s recommendation. Only witnesses who have had direct involvement in the incident leading to the disciplinary action will be allowed to participate and all questions asked should directly relate to said disciplinary action.
(6) The Board may ask questions of the Department of Personnel relating to employment policies and procedures.
(7) At the conclusion of the presentation of testimony and evidence, the Board will privately deliberate and make a decision within five (5) calendar days. No record of the Board’s deliberation will be made. The decision of the Board shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules,
h. Scope of Authority and Limited Waiver of Sovereign Immunity. The decision of the Board shall direct a remedy or remedies consistent with the findings of the Board, enforceable by the Executive Director of Personnel, subject to the following consideration and limitations:
(1) Employees bear the burden of proof to show by a preponderance of the evidence that they have been subject to improper disciplinary action, harassment, or discrimination.
(6) If the Grievance Review Board determines that an employee has been wrongfully suspended, terminated, harassed, discriminated against or the employee’s rights have been violated during the hiring process, the Grievance Review Board shall then determine whether or not to hold a hearing to impose sanctions against the supervisor.
(a) The Grievance Review Board shall only hold this second hearing if it believes that the supervisor knowingly violated the Employment Relations Act.
(b) After the second hearing, supervisors who are found to have wrongfully suspended, terminated, harassed, discriminated or who have violated the hiring process, may be subject to disciplinary action up to and including termination. If the Grievance Review Board makes this determination the Grievance Review Board may:
1 Place the supervisor on probation and provide other nonmonetary sanctions against the supervisor. The Department of Personnel shall develop guidelines for the Grievance Review Board to help it determine the appropriate non-monetary sanction to impose against the supervisor.
2 If the supervisor has previously been placed on probation as a result of a Grievance Review Board determination:
a Order the supervisor to pay monetary damages to the Nation up to $10,000 depending on the severity of the supervisor’s misconduct. b Make a recommendation to his or her supervisor as to whether or not the GRB believes termination is an appropriate sanction. It shall then be up to his or her supervisor to make a determination as to whether or not to proceed with termination.
Subsec. 35. Judicial Review.
c. Judicial review of a grievance involving suspension, termination, discrimination or harassment may proceed to the Ho-Chunk Nation Trial Court only after the Administrative Review Process has been *296 exhausted through the Grievance Review Board.
(1) An employee may appeal a Board decision to the Trial Court within thirty (30) calendar days of when the Board decision is served by mail.
(2) A supervisor may appeal a Board decision which is personally adverse to him or her, as provided for in Section 34, subparagraph h.(6), within thirty (30) calendar days of when the Board decision is served by mail.
e. Under this limited waiver of sovereign immunity, the Court shall review the Board’s decision based upon the record before the Board. Parties may request an opportunity to supplement the record in the Trial Court, either with evidence or statements of their position. The Trial Court shall not exercise de novo review of Board decisions. The Trial Court may only set aside or modify a Board decision if it was arbitrary or capricious.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 18. Types of Motions.
Motions are requests directed to the Court and must be in writing except for those made in Court. Motions based on factual matters shall be supported by affidavits, references to other documents, testimony, exhibits or other material already in Court record. Motions based on legal matters shall contain or be supported by a legal memorandum, which states the issues and legal basis relied on by the moving party. The Motions referenced within these Rules shall not be considered exhaustive of the Motions available to litigants.
Rule 47. Consolidation and Separation of Action.
(A) Consolidation. When actions involving a common question of law or fact are pending before the Court, the Court may order a joint hearing or trial of any or all the matters in issue in the actions; the Court may order all the actions consolidated; and the Court may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
Rule 63. Judicial Review of Administrative Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
a. Employment Relations Act of 2004
(C) The petitioner shall file copies of the Petition for Administrative Review upon all parties to the action. The petitioner shall promptly file Certificate of Service with the Court.
(D) The commission or board, designated as the respondent, must transmit the administrative record to the Court within fifteen (15) days after receipt of the Petition for Administrative Review. The administrative record shall constitute the sole evidentiary record for judicial review' of the agency decision....
(I) The Court shall not set aside or modify any agency decision, unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law, with the following exception:
1. The Employment Relations Act of 2004 mandates that the Court may only set aside or modify a Board decision if it was arbitrary and capricious.
*297 (J) The Court maintains discretion to grant continuances upon a showing of good cause.
DECISION
The Ho-Chunk Nation traces its sovereignty to two (2) independent, albeit intertwined, sources, namely: natural law and consent of the governed. The People or General Council, by and though constitutional pronouncements, have articulated that the tribe maintains “inherent sovereign powers,” ie., sovereignty exists by virtue of the tribe’s status as an independent self-governing entity since time immemorial. Constitution of the Ho-Chunk Nation (hereinafter Constitution), pmbl., Art. Ill, § l.[1] Correspondingly, the sovereignty retained by the tribe flows from and through its People, functioning as a “democracy,” Id.
In this respect, the constitutional text shares much in common with the founding document of the Republic. The Declaration of Independence para. 2 (U.S.1776). Similarly, each democracy, tribal and federal, significantly adopted the English judicial tradition despite the non-monarchical origin of the respective governments. For example, numerous doctrines, principles and concepts appear within the tribal judicial article that possess no readily discernible or intrinsic legal meaning absent recourse, deliberate or not, to the British common law tradition.[2] See generally Ronald K. Kirkwood v. Francis Decorah, in his official capacity as Dir. of HCN Hous. Dep’t, et al., CV 04-33 (HCN Tr. Ct, Feb. 11, 2005) at 14-17, 6 Am. Tribal Law 188, at 198-200 (analyzing the historical distinction between actions at law and equity). This model of justice persevered for several reasons, including, but not limited to, the following: convenience, continuity, reverence and respect. The interpretation of jurisprudential terminology may assuredly transform, as it always has, but should not become unnecessarily disassociated from well-understood meanings developed over centuries. One should presume that the tribal constitutional framers acted with intention when drafting the constitutional document.
Focusing first upon the most essential and rudimentary terminology, our constitutional text refers to the “judicial power” *298 without explicitly defining the phrase. Const., ART. VII, § 4. To reiterate, in the English tradition, “[t]he law ascribe[d] to the king the attribute of sovereignty, or pre-eminence.” 1 William Blackstone, Commentaries on the Laws of England *241 (1765). “The King was the repository of all sovereignty, [and t]he common law judges were his surrogates in exercising his judicial power.” Conover v. Montemuro, 477 F.2d 1073, 1101 (3d Cir.1972) (Gibbons, J., concurring). Once conferred, the traditional Courts of Law and Equity preserved this power inviolate.
The King hath committed all his power judiciall [sic], some in one Court, and some in another, so as if any would render himselfe [sic ] to the judgment of the King in such case the King hath committed all his power judiciall [sic ] to others, such a render should be to no effect. And the King doth judge by his Judges (the King having distributed his power judiciall [sic] to severall [sic] Courts). And the King hath wholly left matters of judicature according to his lawes [sic ] to his Judges.
4 EdwaRd Coke, Institutes of the Laws of England *73 (1671).
In the United States, the Judiciary still obtained its powers from the sovereign, but the source of ultimate power rested within the citizenry. “[G]overnment derive[d] its sovereignty from the people. All governmental power not reserved by the people [wa]s vested in the three branches.” Vietnam Veterans Against the War v. Veterans Memorial Auditorium Comm’n, 211 N.W.2d 333, 338-39 (Iowa 1973). Nonetheless, the fundamental nature of judicial power remained unchanged.
In endowing this Court with “judicial Power” the Constitution presupposed an historic content for that phrase and relied on assumption by the judiciary of authority only over issues which are appropriate for disposition by judges. The Constitution further explicitly indicated the limited area within which judicial action was to move—however far-reaching the consequences of action within that area—by extending “judicial Power” only to “Cases” and “Controversies.” Both by what they said and by what they implied, the framers of the Judiciary Article gave merely the outlines of what were to them the familiar operations of the English judicial system and its manifestations on this side of the ocean before the Union. Judicial power could come into play only in matters that were the traditional concern of the courts at Westminster and only if they arose in ways that to the expert feel of lawyers constituted “Cases” or “Controversies,”
Coleman v. Miller, 307 U.S. 433, 460, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (Frankfurter, J., dissenting).[3]
As expressed by Justice Felix Frankfurter, the Supreme Court is the direct recipient of judicial power. “ ‘Judicial power ... is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.” Muskrat, 219 U.S. at 356, 31 S.Ct. 250 (quoting Justice Samuel Millek, on the Constitution of the United States 314 (1891)). The constitutional provision in *299 question reads as follows: “The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.” U.S. Const, art. Ill, § 1.
The residual character of the judicial power conferred upon the “inferior Courts” has culminated in expressions of ambiguous jurisprudential authority.
All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to “ordain and establish” inferior courts, conferred on Congress by Article III, § 1, of the Constitution.... The Congressional power to ordain and establish inferior courts includes the power “of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good.”
Lockerty v. Phillips, 319 U.S. 182, 188, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943) (quoting Cary v. Curtis, 44 U.S. 236, 245, 3 How. 236, 11 L.Ed. 576 (1845) (ascribing the judicial power as “applicable exclusively to this court” and, as a result, “[t]he courts of the United States are all limited in their nature and constitution, and have not the powers inherent in courts existing by prescription or by the common law”)). More precisely, “[i]t has long been settled that inferior federal courts receive no powers directly from the Constitution but only such authority as is vested in them by the Congress.” Nat’l Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 627, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Vinson, C.J., dissenting) (citing Turner v. President, Dirs., & Co. of Bank of N. Am., 4 U.S. 8, 11, 4 Dall. 8, 1 L.Ed. 718 (1799)).
In summation, the federal Constitution directly conferred the judicial power upon the Supreme Court, which, while vague in its depiction, embodied a rich and textured history inherited from the English common law courts. In contrast, the lower federal appellate and district courts relied upon legislative prerogative for both form and function. Yet, once the various courts came into existence, the judicial authority wielded by the federal judiciary could not simultaneously rest within either the legislative or executive branch of government despite the absence of a separation of powers clause.
[T]he constitution ... delineated only the great outlines of the judicial power; leaving the details to congress, in whom was vested, by express delegation, the power to pass all laws necessary and proper for carrying into execution all powers except their own. The distribution and appropriate exercise of the judicial power, must therefore be made by laws passed by congress, and cannot be assumed by any other department; else, the power being concurrent in the legislative and judicial departments, a conflict between them would be probable, if not unavoidable, under a constitution of government which made it the duty of the judicial power to decide all cases in law or equity arising under it, or laws passed, and treaties made by its authority.
Rhode Island v. Massachusetts, 37 U.S. 657, 721-22, 12 Pet. 657, 9 L.Ed. 1233 (1838) (citations omitted).
The constitutional moorings of the Ho-Chunk Nation Judiciary are decidedly more secure than its federal counterpart. The Supreme and Trial Courts exercise the judicial power directly conferred by the General Council. The judicial article also expresses the practical aspects of such power. For instance, the Supreme Court has summarized the constitutional authority of the Trial Court as follows:
*300 The Trial Court has the power to make findings of fact and conclusions of law. The Trial Court shall have the power to issue all remedies in law and equity including injunctive and declaratory relief. Further, the Trial Court has the power to declare the laws of the Ho-Chunk Nation void if such laws are not in agreement with the HCN Constitution.
Robert A. Mudd v. HCN Legislature et al., SU 03-02 (HCN S. Ct., Apr. 8, 2003) at 6 (citing Const., Art. VII, § 6). Furthermore, The Supreme Court has acknowledged “a clear separation of powers embedded in the HCN Constitution.” Marx Adver. Agency, Inc. v. Ho-Chunk Nation et al., SU 04-07 (HCN S. Ct., Apr. 29, 2005) at 10. The General Council insisted upon the separation of governmental functions. Const., Art. Ill, § 3.
Against this backdrop, this Court cautiously approached the extension of administrative law into the employment context. For clarity, the Court previously analyzed the several stands of agency action recognized in the federal system, ultimately equating the statutory function of the GRB with on the record adjudication. See generally Regina K. Baldwin et al. v. Ho-Chunk Nation et al., CV 01-16, -19, - 21 (HCN Tr. Ct., Jan. 9, 2002) at 12-26.[4] The Court perceived potential constitutional concerns with the assigned duties of the GRB. However, as subsequently verified, “[w]hen faced with a statute that appears to violate constitutional principles, a court has two alternatives: it can declare the statute void because it is unconstitutional or it can read the statute in such a way to comport with constitutional principles.” Willard Lone Tree v. Larry Garvin, in his official capacity as Executive Dir. of HCN Heritage Pres., SU 07-04 (HCN S.Ct., Oct. 8, 2007) at 6, 7 Am, Tribal Law 71, at 75.[5]
The Court, therefore, sought to accommodate the GRB’s assertion of authority within the constitutional framework. The preliminary order in each GRB appeal accordingly addresses the theoretical underpinning of the given suit.
The Court will neither schedule a discovery period nor convene a formal trial since it must decline to relitigate the underlying cause(s) of action. Rather, the Court will perform a deferential review of the agency decision, applying the applicable level of judicial scrutiny. HCN R. Civ. P. 63(1). An agency decision embodies and pronounces legislative rules that arise through formal on the record administrative adjudication. The Ho-Chunk Nation Legislature has delegated legislative authority to the respondent board, commission or committee to articulate such rules within the enabling legislation.
See, e.g., Scheduling Order, CV 10-07 (HCN Tr. Ct., Jan. 18, 2010) at 3. The Legislature lacks the constitutional authority to confer judicial power upon an executive agency since it does not possess such power in the first instance.
As discussed above, Congress faces a similar, although not identical, limitation, but may assert a greater capacity to define the jurisdiction of the lower *301 courts. The administrative regime nevertheless operates upon a theoretical construct created by, and inevitably accepted within, federal case law. Essentially, “only statutory interpretations by agencies ■with rule-making powers deserve substantial deference. The principal rationale underlying this deference is that in this context the agency acts as a congressional proxy; Congress develops the statutory framework and directs the agency to flesh out the operational details.” Atchison v. Pena, 44 F.3d 437, 441-442 (7th Cir.1994) (citing Chevron v. Natural Resources Defense Council Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Administrative law must exist as such lest it offend traditional and constitutional separation of powers concerns.
Again, the Legislature’s ability to curtail or condition judicial authority is significantly diminished in the tribal setting. The subject matter jurisdiction of the Trial Court appears explicitly in the constitutional text. “The Trial Court shall have original jurisdiction over all cases and controversies ..., in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation....” Const., Art. VII, § 5(a).[6] Moreover, once a case is accepted, “[t]he Trial Court shall have the power to make findings of fact and conclusions of law” and “shall have the power to issue all remedies.” Id., § 6(a).
As a result, an obvious problem surfaces when the Court is deprived of an opportunity to find facts, interpret statutory language and award appropriate relief in conjunction with disputes that clearly arise under the Employment Relations Act of 2004, 6 HCC § 5 (hereinafter ERA). This problem becomes more pronounced when the GRB has never even alluded to promulgating legislative rules by means of on the record adjudication. Rather, the GRB initially insisted that it exercised a decidedly judicial function.
The GRB is more similar to a lower court of special jurisdiction, created by Legislative act, and as authorized in Article VII of the HCN Constitution.... The GRB makes findings of fact, and conclusions of law with respect to compliance primarily with the ERA, and other applicable employment laws, resolutions, and policies of the HCN.
Janet Funmaker v. Libby Fair child, in her capacity as Executive Dir. of HCN Dep’t of Pers., et al., SU 07-05, Appellant’s Br. at 5 (Apr. 20, 2007).
In response, The Supreme Court definitively “rule[d] that a ‘suit’ has to occur in a court of law.” Funmaker, SU 07-05 (HCN S.Ct., Aug. 31, 2007) at 4, 7 Am. Tribal Law 61, at 64. In addition, the Court posited that “[t]he Personnel Department is an example of an Executive Department that is wielding delegated legislative authority,” and “[t]he GRB is an agency within the Department of Personnel” Id. (citation omitted).[7] Corre *302 spondingly, the Supreme Court determined that “[b]ecause the GRB is part of the Department of Personnel, it too only has delegated Legislative authority.” Id. at 64. Rather emphatically, the Supreme Court concluded: “the GRB cannot be considered a court and has no judicial authority. If it were to be considered a court, grave separation of powers problems would arise,” e.g., “the Legislature would be impermissibly delegating authority it does not have, encroaching upon the Judiciary’s authority.” Id. at 65 (citation omitted).
Yet, while the Supreme Court confirmed that the GRB cannot exercise judicial power, it refrained from articulating the precise delegated legislative power(s) that the GRB employs when deciding an administrative grievance.[8] The Court’s conclusion that the GRB exercises delegated legislative powers because the Legislature can only confer legislative powers by means of its constitutional obligation to establish Executive departments is a non sequitur.[9] The question remains whether the Legislature in fact possessed the powers that it purports to have delegated to the executive agency, and, if so, whether the agency is properly acting pursuant to such delegated powers.
Perhaps an examination of the administrative review process can offer the necessary insight to provide an answer. Any employee, including Initial Probationary and Limited Term Employees, may submit a grievance alleging discrimination or harassment to the GRB. ERA, § 5.7o(6), 9a, 33a-b. In addition, a candidate for employment may challenge the “interview and selection process,” and hence application of the Ho-Chunk preference policy. Id., § 5.33d. Finally, all remaining employees may also grieve terminations and suspensions to the GRB. Id., § 5.34a(2).
The submission of a grievance, ie., “employment related law suit[ ],” consists of a request for a hearing in which the grievant “must inform the Department of Personnel if he or she is to be represented by an attorney.” Id., § 5.34d. Thereafter, the process is comprised of the following facets: a) impaneling the GRB, id., § 5.34a(2); b) filing of notice of appear- *303 anee by grievant’s legal counsel, if independently acquired, id., § 5.34d; c) exchanging and filing witness lists, including possible amendments thereto, id., § 5.34e(l-2); d) presenting documentary evidence intended for use at the hearing, including possible addition thereto, id.; e) convening a GRB pre-hearing to review presented evidence, id., § 5.34f(i); f) holding a hearing at which the opposing sides present legal argument, id., § 5.34f(2—3); g) affording parties the ability to offer testimony through witnesses, id.; h) permitting cross-examination of witnesses, id., § 5.34f(4)(a); i) imposing an evidentiary standard of preponderance of the evidence, id., § 5.34h(i); j) allowing direct questioning of parties and witnesses by GRB members, id., § 5.34f(4)(b), g(3); k) enabling the introduction of additional evidence at the discretion of the GRB, id.; 1) entrusting the GRB with making relevancy determinations, id., § 5.34g(4—5); m) allowing direct questioning of the Department of Personnel by the GRB regarding applicable law, id., § 5.34g(6); n) permitting the granting of a continuance at the discretion of the GRB for purposes of obtaining additional evidence, id., § 5.34f(4)(b), g(3); o) allowing final statements of the parties at the hearing’s conclusion, id., § 5.34f(5); p) creating a record of the hearing, id., § 5.34g(2); q) deliberating in closed session after the hearing, id., § 5.34g(7); and r) issuing a written decision in which the GRB “shall describe the facts of the case and determine whether the facts support a violation of the Employment Relations Act or applicable Unit Operating Rules.” Id. Furthermore, the GRB can only issue relief commensurate with a specific legislative limited waiver of sovereign immunity. Id.., § 5.34h.
The parallels to a judicial proceeding are patently obvious, but the similarities do not necessarily imperil the administrative structure, provided that the executive agency still performs a legislative function. The enabling legislation, however, stands in apparent opposition to this indispensible purpose. The Court shall highlight four (4) troublesome areas. First, the GRB consists of randomly selected members “with grievance training,”[10] Id., § 5.34a(2). Therefore, the composition of the GRB may vary from case to case and week to week, depriving it of continuity and accumulated experience. The GRB has acknowledged this impediment, conceding:
The GRB admittedly does not cite to the specific documentary evidence that it relies upon. Nor does it cite to the specific witness testimony relied upon. This can clearly be related to the lack of specificity in the statute, the lack of direction from the Trial Court, and the lack of experience of the GRB.
HCN GRB et al. v. Kerry Funmaker, SU 09-04, Hr. in Supp. of Appeal at 11-12 (Oct. 1, 2009).
The Supreme Court has cited agency expertise as a justification for judicial deference in other contexts. For example, the Supreme Court confirmed “that the Trial Court owes the Gaming Commission great deference” due to “the Commission’s familiarization with the [Gaming] ORDINANCE and the importance of achieving internal consistency within the document.” Robert Gerhartz v. HCN Gaming Comm'n, SU 06-06 (HCN S.Ct., July 3, 2007) at 4. This rationale has since crept into the employment context, but perhaps unduly so. “The GRB, with its greater expertise and familiarity, is the appropriate body to *304 find facts.” Janet Funmaker v. Tracy Thundercloud, in his capacity as acting Executive Dir. of HCN Dep’t of Pers., et al., SU 07-05 (HCN S.Ct., Aug. 31, 2007) at 9, 7 Am. Tribal Law 61, at 67.
Second, both the Supreme Court and the Legislature recognize the importance of maintaining consistency and uniformity in the administration of law. Peks. Establishment Act, § 10.4b; ERA, § 5.2. “The need for reasoned decision-making and the consistent application of resulting decisions” remains a focus within judicial review of any agency action. Baldwin, CV 01-16, -19, -21 at 20. The rotating membership of the GRB serves to undermine this necessary objective, especially in light of the next problematic concern.
Third, GRB administrative “proceedings are confidential.” ERA, § 5.34g(l). As a result, grievants cannot access prior cases to craft arguments based upon the application of announced legislative rules to similar facts. This statutory limitation raises constitutional concerns since “[t]he Ho-Chunk Nation ... shall not deny to any person within its jurisdiction the equal protection of its laws-” Const., Art. X, § 1(a)(8). Quite simply, “[t]he equal protection clause of the HCN Constitution guarantees that all person [sic ] similarly situated will be treated equally.”[11] Joan M. Whitewater et al. v. HCN Office of Tribal Enrollment et al., SU 01-06 (HCN S.Ct., Oct. 31, 2001) at 6. The Court maintains grave doubts that the employment administrative process adequately or even presumptively ensures equal protection of the law.
Finally, the confidential nature of the proceedings undercuts any notion that the GRB is actually engaged in the promulgation of legislative rules, which it likely rejects in any event. Additionally, the GRB must “make a decision within five (5) calendar days” after “the conclusion of the presentation of testimony and evidence.” ERA, § 5.34g(7). The minimal timeframe afforded for deliberation, reflection, research and composition belies any suggestion that the Legislature intended the GRB to perform a delegated legislative function.
The GRB recently provided an overview of its understood organizational function.
The GRB is a group of employee peers who meet as a Board to provide an impartial, semi-formal, and hopefully more objective review of grievance matters than the previous means of appealing discipline appeared to provide. The GRB was established in part to deal with the problems associated with the former grievance process that required a grievant to appeal to the supervisor’s superior. That process for appealing perceived wrongs carried with it an inadequate and slowr means of seeking redress at best, and was fraught with the perception of collusion at worst. The GRB determines whether or not disciplinary action which comes before it wras handled properly. The Board members are employee volunteers who are randomly selected to sit on hearing panels. They are guided by the rules and policy of the Employment Rights Act (ERA) and bring to any hearings at which they take part their own personal work experience and understandings of the employment workforce and dynamics. They are trained to seek out necessary facts and relevant facts in order to reach a reasoned decision and are informed of *305 the limits within which they must make that decision. In particular, they have been trained on how to avoid an arbitrary and capricious decision.
Wayne Falcon v. Liz Halter et al., SU 09-05, -07, Amicus Curiae Br. at 5-6 (Nov. 24, 2009). Nowhere does the GRB reference any duty or obligation to pronounce legislative rules. The GRB merely perceives that it operates as the successor to the previous Administrative Review System, and engages in case by case adjudication of grievances. More specifically, the GRB emphasized “the legislative policy [of] creating the GRB as a tool for efficient employment problem solving.” Id. at 7.
Despite the Court’s misgivings with the constitutional stature of the GRB, the Court lacks authority to make a determination regarding its constitutionality. The Supreme Court has repeatedly confirmed that the Court must afford deference to GRB decisions.[12] The Supreme Court previously criticized the Trial Court for failing to apply the “appropriate standard of review.” Gale S. White v. Jean Ann Day, SU 08-02 (HCN S.Ct., Aug. 4, 2008) at 4. In particular, when “reviewing an agency decision made under the ERA, the Trial Court may only set aside or modify such a decision if it was ‘arbitrary and capricious.’ ” [13] Id. (quoting HCN R. Civ. P. 63(I)(1)).
In one of its recent decisions, “[t]he Supreme Court recognize[d] that when reviewing administrative decisions, the Trial Court plays the role of an appellate court and is not charged with finding facts.” [14] Kerry Funmaker v. HCN GRB et al., SU 09-04 (HCN S.Ct., Mar. 29, 2010) at 4, — Am. Tribal Law-, at-. As noted above, the Supreme Court posited that “[t]he GRB, with its greater expertise and familiarity, is the appropriate body to find facts.” Id. at 4 (citing, in part, ERA, § 5.34a(2) (indicating that “[t]he Board will be selected from a set pool of employees and supervisors with grievance training”)). At the same time, the Court explained that the “GRB agency is not a board of legally trained individuals, who can perfect the written agency decision to the Trial Court [sic ] satisfaction.” Id. at 5. Despite this acknowledgement, the Court reiterated the applicable standards of review as follows: “Substantial evidence test is in its entirety of record [sic ] supports the decision. Whereas, the arbitrary and capricious standard is based on an evaluation of the decision was based [sic ] on relevant factor [sic ].” Id. at 6 (citing ERA, § 5.35e (prohibiting de novo review of agency determinations)).
This Court does not challenge the articulated standards of administrative review, *306 but must insist that the underlying administrative decision arise from a delegated legislative power. The incorporation of a judicial function within a legislative enactment does not remove the constitutional infirmity, but instead exacerbates it. The GRB must be engaged in lawmaking, at most, or legislative rulemaking, at a minimum.
In this regard, the Supreme Court has announced “a guiding principle ... that statutes cannot be interpreted in such a way as to violate constitutional principles.’ ” Lone Tree, SU 07-04 at 4-5, 7 Am. Tribal Law at 74 (citing ERA, § 5.35e). The Lone Tree Court was loathe to sanction a “violatfion] of separation of powers principles” in an instance where “the Legislature would ... have the power to not only make the law but interpret it as well.” Id. at 5, 7 Am. Tribal Law at 74. The Supreme Court identified the GRB, a legislative instrumentality, as the interpreting authority, and held that it could not provide binding rulings in relation to the constitutional due process clause. Id.; see also Const., Art. X, § 1(a)(8). The Court stopped short of determining whether the GRB’s adjudicative rulings, in general, usurped judicial power since not presented as an issue on appeal.
The Legislature can generally “make laws” and more specifically “set the ... terms and conditions of employment for all government personnel” and “enact ... laws prohibiting and regulating conduct.” [15] Const., Art. V, § 2(a, f, h). The GRB must of necessity discharge its duties while strictly relying upon one or more of these potentially delegated legislative powers, but the Court can no longer in good conscience simply presume adherence to a constitutional prerequisite. The Legislature is subject to constitutional limitations whenever it purports to delegate legislative authority, which unlikely occurred in the ERA.
[T]he Constitution [is] the “supreme law over all territory and persons within the jurisdiction of the Ho-Chunk Nation.” Const., Art. Ill, § 4. Article V, § 2(b) requires that all delegated legislative actions be exercised “in accordance with the law.” Hence, any act undertaken by any governmental branch or government agent contrary to the Constitution is thereby void.
Debra C. Greengrass v. HCN Election Bd., SU 99-03 (HCN S.Ct., June 30, 1999) at 3.
The GRB, by virtue of its formation and/or function, represents an intrusion into the constitutional province of the Judiciary. The Judicial Branch should not assent to the denuding of its constitutional role. “The Ho-Chunk Nation has established its Court system to deal with disputes between parties. The system provides for a trial level to address the merits of a dispute as well as providing additional due process guarantees to parties to litigation through the provision of appellate processes.” Bank of Am., SU *307 03-06 at 7. Under the ERA, the GRB addresses the merits of each dispute without contemporaneously performing a legislative function.
Moreover, the Court’s remedial powers are preempted and circumscribed by the agency’s adjudicatory determinations. The Supreme Court, however, has already rebuffed the argument “that the Trial Court can never impose a remedy ... ■exceeding] its statutory authority.’ ” Gerhartz, SU 06-06 at 9 (citation omitted). The Gerhartz Court explained as follows: “Th[e] statutory limitation cannot supersede the Constitution’s grant of power to the Trial Court, The Trial Court has the authority to ‘issue all remedies in law and equity.’ Const.. Art. VII, § 6(a). Because of this Constitutional mandate, it cannot be error for the Trial Court to exercise its remedial power....” Id.
The Court’s evolving perception of the GRB supports its decision to release the agency as a named party in these consolidated cases. The Court initially believed that the GRB should appear as a respondent in order to presumably defend its articulated legislative rules. The Court no longer holds this opinion. The GRB has likely never held this opinion, but has noted an interest in resulting judicial decisions.[16] The Court’s decision is also guided in large measure by the Supreme Court’s comments on the matter.
The Supreme Court questioned the addition of the GRB as a party respondent in an administrative appeal to the Trial Court, noting, by comparison, that “if one of the parties becomes dissatisfied with the lower court decision, and elects to file an appeal of this court decision, it is not an acceptable procedural standard to add the HCN Trial Court as a party to the suit.” Funmaker, SU 09-04 at 1 n. 1; but see HCN R, Civ. P. 63(D) (requiring that “[t]he commission or board, designated as the respondent, must transmit the administrative record to the Court”). Despite the clarity of the foregoing rule, the Fun-maker Court instead referenced a general procedural provision for foundational support. “Pursuant to HCN R. Civ. P. 27(B), the case name should remain the same as the original grievance.” Id. The cited rule provides, in relevant part, that “[w]hen ... the Nation is named as a party, the Complaint should identify the unit of government, enterprise or name of the official or employee involved.” HCN R. Civ. P. 27(B). The rule makes no reference to administrative proceedings, including any direction regarding the retention of agency hearing captions on appeal.
Nevertheless, the Supreme Court has also removed the GRB as a named appel-lee upon joint stipulation of the parties, reviving the caption used in the underlying administrative proceeding. Darren L. Brinegar v. Bus. Dep’t et al., SU 10-01 (HCN S. Ct., July 29, 2010), — Am. Tribal Law-. The appellant partly sought review of the agency decision “because the Nation not extend [ sic] the protection under construction [sic ] discharge.” Brinegar, 9 Am. Tribal Law 137, at 141. The GRB had held that it was “not empowered to determine by interpretation if placing an ultimatum before an employee to resign or be terminated is against the law.” Darren Brinegar v. Dep’t of Bus. et *308 al., 051.08PH (HCN GRB, July 30, 2008) at 2, It subsequently reiterated this legal position on appeal, arguing:
The GRB absolutely does not recognize this exception in cases where it finds that resignations may be involuntary. The GRB dismisses cases where an employee resigns and accepts a settlement, then attempts to file a grievance. An employee should not be able to negotiate a settlement and then having second thoughts about the settlement pursue the GRB process also. Adopting such a theory eviscerates the ability of management and employees to reach a settlement in an employment dispute.... The Appellee urges this Court to find that this ease is not the proper case to recognize a constructive discharge concept.
Brinegar, SU 10-01, Letter Br. of Appellee HCN GRB (July 27, 2010) at 17,19.
The appellant, in essence, sought injunc-tive relief to require the recognition of the defense of constructive discharge. The Supreme Court, however, removed the agency fi*om the appeal prior to addressing the merits of the appeal, thereby creating a redressability dilemma. If the appellant succeeded upon appeal, the Supreme Court could not enjoin either the Business Department or Joseph Decorah to employ the doctrine of constructive discharge. Any such ruling would only logically “involve! ]” the GRB. HCN R. Civ. P. 27(B); see also Timothy G. Whiteagle et al. v. Alvin Cloud, Chair of the Gen. Council et al., CV 04-44 (HCN Tr. Ct., Aug. 5, 2004) at 21-23, 5 Am. Tribal Law 178, at 193-95 (discussing redressability in the context of a standing inquiry), aff'd, SU 04-06 (HCN S.Ct., Jan. 3, 2005).
As with the above discussion, the Court must refer the parties to the Supreme Court for purposes of further review. The Court directs the parties to restore the captions existing in the respective administrative proceedings for all future use in this tribunal. The Court shall independently issue Notice(s) of Hearing to inform the remaining parties of the date, time and location of individual scheduling conferences. The Court shall deliver notice to the GRB, and it may unilaterally decide to intervene in a given case through appropriate motion.

. See also Alden v. Maine, 527 U.S. 706, 763, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (”[N]atural law [is] a universally applicable proposition discoverable by reason”): id. at 768 n. 6, 119 S.Ct. 2240 (Souter, J., dissenting) (identifying the conceptual natural law tradition of sovereignty espoused by several prominent philosophers, including Thomas Hobbes (1588-1679) and John Locke (1632— 1704)).

. That being said, the Ho-Chunk Nation Judiciary has not recognized either English or American common law causes of action not explicitly referenced within the constitutional text. See, e.g., Maureen Arnett et al. v. HCN Dep’t of Admin, et at, CV 00-60, -65 (HCN Tr. Ct., Jan. 8, 2001) at 16-18 (refusing to acknowledge the doctrine of promissory es-toppel as an independent basis of subject matter jurisdiction). The Judiciary, instead, derives common law causes of action though the pronouncement, incorporation and proliferation of Ho-Chunk tradition and custom. See Const., Art. VII, § 5(a); see also In re: Name Change of Courtnay C. White, CV 06-44 (HCN Tr. Ct., Aug. 21, 2006) (regarding assumption of patrilineal surname); In the Interest of C.A.D., DOB 03/18/80, CV 98-38 (HCN Tr. Ct., Apr. 15, 2002) (regarding guardianship of adult incompetent member); Dorothy G. Decorah v. Kim L., Whitegull, CV 02-17 (HCN Tr. Ct., Mar. 1, 2002) (regarding trespass to property); Ho-Chunk Nation v. Ross Olsen, CV 99-81 (HCN Tr. Ct., Sept. 18, 2000), 2 Am. Tribal Law 299 (regarding oral contacts); Melody L. Whiteagle-Fintak v. Steven Fintak, DV 99-01 (HCN Tr. Ct., Sept. 8, 1999), 2 Am. Tribal Law 256 (regarding spousal abuse); P.B.M., DOB 01/14/19 v. Loylee B. Mike et at., CV 99-42 (HCN Tr. Ct., July 23, 1999) (regarding elder abuse).

. “The term ‘controversies,’ if distinguishable at all from ‘cases,’ is so in that it is less comprehensive than the latter, and includes only suits of a civil nature.... The term[s] impl[y] the existence of present or possible adverse parties whose contentions are submitted to the court for adjudication.” Muskrat v. United States, 219 U.S. 346, 356-57, 31 S.Ct 250, 55 L.Ed. 246 (1911) (citation omitted).

. The Baldwin opinion appears at www.ho-chunknatkm.com/govemment/judicial/case_ index2.htm.

. The justification for this approach appears within federal case law, i.e., “[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a flegis-lative] enactment only upon a plain showing that [the legislative body] has exceeded its constitutional bounds.” United States v. Morrison, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (commenting upon the "presumption of constitutionality”).

. The Supreme Court confirmed that subject matter jurisdiction derives from “[a] dispute in law[,j which the HCN Trial Court can apply," i.e., whether the case or controversy “ ‘aris[es] under the Constitution, laws, customs [or] traditions of the Ho-Chunk Nation.’ ” Ho-Chunk Nation v. Harry Steindorf et al., SU 00-04 (HCN S.Ct., Sept. 29, 2000) at 3 (quoting Const., Art. VII, § 5(a)).

. Cited statutory authority for this proposition reads, in relevant part, as follows:
Article V, Section 2(b) of the Constitution grants the Legislature the power to establish Executive Departments, and to delegate legislative powers to the Executive Branch to be administered by such Departments in accordance with the law ...; the Legislature reserves the power to review any action taken by virtue of such delegated power.
Dept of Pers. Establishment & Org Act of 2001 (hereinafter Personnel Establishment Act), 1 HCC § 10.1 b. Notably, this legislation does *302 not delegate any lawmaking authority whatsoever. Id., § 10.4a-c; see also ERA, § 5.4a.

. In contrast, the United States Congress cannot constitutionally delegate its legislative powers to the Executive Branch. " 'The ... distinction ... is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law.’ ” J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 407, 48 S.Ct. 348, 72 L.Ed. 624 (1928) (citation omitted); see also Whitman v. Am. Trucking Assoc., Inc., 531 U.S. 457, 473-75, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). No federal constitutional provision allows a direct legislative delegation.

. This Court has not accepted the rationale that the Executive Branch exercises a delegated legislative authority by virtue of its enforcing or administering the law, which represents an independent constitutional duty. Const., Arts IV, § 2, VI, § 2(a); see also Gerald Cleveland, Jr. v. Elliot Garvin et al., CV 08-36 (HCN Tr. Ct„ Feb. 2, 2009) at 10 n. 9, 8 Am. Tribal Law 21, at 28 n. 9; Clarence Pettibone v. HCN Legislature et al., CV 01-84 (HCN Tr. Ct„ May 15, 2002) at 14-15 n. 3, 4 Am. Tribal Law 330, at 340 n. 3. “All the officers of government ... are creatures of the law, and are bound to obey it.” United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. 220(1882), However, characterizing compliance with or adherence to the law as performance of a delegated legislative function would severely and illogically undermine the independence of the various branches of government. Const , Art III, § 3; but cf. Loa L. Porter v. Chloris A. Lowe, Jr., SU 96-05 (HCN S.Ct., Jan. 10, 1997) at 2 (equating delegated legislative power with "the power of the Executive Branch to administer departments of the Ho-Chunk Nation”).

. “The GRB are teams of lay persons. These individuals are employees of the Nation who have had some training prepared by lay people to apply law to facts." Karen Litscher v. HCN GRB, SU 09-03, Appellant's Reply at 1 (Sept. 3, 2009).

. Furthermore, the equal protection concerns invariably present in discrimination and preference grievances render agency consideration of such issues most likely non-disposi-tive upon appeal. See Williard Lone Tree v. Larry Garvin, in his official capacity as Executive Dir. of HCN Heritage Pres., SU 07-04 (HCN S.Ct., Oct. 8, 2007) at 4-5.

. “Stare decisis is the policy of courts to stand by prior established precedent.” HCN Election Bd. v. Robert A. Mudd, SU 97-05 (HCN S.Ct., Oct. 28, 1997); see also Jacob Lone Tree et al. v. Robert Funmaker, Jr. et al., SU 00-16 (HCN S.Ct., Mar. 16, 2001) at 3-4 (“While the [T]rial [C]ourt should try to remain consistent in its decisions, only decisions by this fCJourt are limitations on the Trial Court”).

. Similarly, “[a]s a reviewing Court in administrative review cases, the Trial Court's only concern should be whether there is substantial evidence in the record to support the agency's decision, and whether the agency's decision was reasonable in light of all the evidence available to the agency.” Sharon Williams v. HCN Ins. Review Comm'n, SU 08-01 (HCN S. Ct, Oct. 29, 2008) at 15-16.

.Regardless, the Supreme Court confusingly continues to inquire whether the Trial Court has committed an abuse of discretion, despite the absence of any fact-finding. Id. at 3 (citing Williams, SU 08-01 at 7); see also Gale S. White v. Jean Day et al., CV 07-54 (HCN Tr. Ct., Dec. 9. 2008) at 21-23, 7 Am. Tribal Law 256, at 270-72 (commenting on the problematic adoption and arguable misuse of common standards of review).

. The Legislature possesses numerous other constitutional powers, but none of these may rationally serve as the source of the GRB’s delegated authority. Furthermore, the Legislature ”set[s] ... terms and conditions of employment” through promulgation of statutes and resolutions or, to a lesser degree, execution of contracts. In the latter instance, the contractual provisions provide the applicable law for any resulting suit. See HCN Treas. Dep’t et al. v. Corvettes on the Isthmus et al., SU 07-03 (HCN S.Ct., Nov. 19, 2007), 7 Am. Tribal Law 78; Marx Adver. Agency, SU 04-07; Ho-Chunk Nation v. Bank of Am., N.A., SU 03-06 (HCN S.Ct., Sept. 11, 2003); F. William Johnson v. Ho-Chunk Nation, CV 01-15 (HCN Tr. Ct., June 18, 2003); see also ERA, § 5.7o(2). In the former instance, the Legislature must manifest its policy decisions though either statute or resolution as opposed to informal individually based declarations. Const., Art. XI, §§ 1-2.

. “Though the GRB is not directly affected by the outcome of the litigation between a grieving employee and a Ho-Chunk Nation department supervisor, the GRB has an interest in all judicial rulings and decisions involving appeals from its hearings.’’ Falcon, SU 09-05, -07, Amicus Curiae Br. at 2 (footnote omitted). The Court shall reserve consideration of whether the GRB must appear as a party in an instance where it imposes sanctions against, a supervisor. ERA, § 5.35h(6).